354 So.2d 808 (1978)
Floyd PEDDYCOART et al., Mrs. Peggy J. Salamone, etc., Robert Lee McKinnon, Sr., etc., Roger Dale Crocker and Richard Lambert et al.
v.
CITY OF BIRMINGHAM.
S.C. 2552, S.C. 2662, S.C. 2731, S.C. 2356 and S.C. 2729.
Supreme Court of Alabama.
January 13, 1978.
Rehearing Denied February 10, 1978.
*809 W. Eugene Rutledge of Rutledge, Williams, Williams & Norton, Anniston, for appellants Mrs. Peggy J. Salamone, who sues in her capacity as the mother of Michael A. Salamone, a 17-year old minor child, Robert Lee McKinnon, Sr., as Administrator of the Estate of Robert Lee McKinnon, Jr., deceased, and amicus curiae, Peggy J. Salamone as appellant in the case of Mrs. Peggy J. Salamone, who sues in her capacity as the mother of Michael A. Salamone, deceased, a 17-year old minor child v. The City of Birmingham, (appellee).
Mike W. McCormick, Birmingham, for appellant Roger Dale Crocker.
Roger M. Monroe of Jones & Monroe, Birmingham, for appellants Richard Lambert et al., and Floyd Peddycoart et al.
Milford G. Bass, Jr., Birmingham, for City of Birmingham, appellee.
BEATTY, Justice.
This is a consolidated appeal by five plaintiffs who filed tort actions against the City of Birmingham. In each case the trial court granted a motion to dismiss based upon a plea of governmental immunity under Tit. 62, § 660, Alabama Code (Recomp. 1958):
The city shall not be liable in damages for personal injuries or damage to personal property by reason of any act or omission done or omitted in the exercise of its governmental functions or failure to exercise such functions; provided, however, that this provision shall not be construed to prohibit or limit the recovery of damages for personal injuries arising out of defects in highways as now provided or allowed by law.
*810 The plaintiffs have placed in issue the constitutionality of that statute under both the state and federal Constitutions. It is contended that § 660 is a local Act notwithstanding the fact that in its original form, Act 257, § 13, Acts of Alabama, Regular Session 1915, it bore a minimum population classification of 100,000. The plaintiffs argue that this section is constitutionally offensive under § 106 of the Alabama Constitution of 1901 because the population classification is not reasonably related to the purpose of the section, and because it permits an unequal application of the law.
Our cases have held that such a relationship must exist between the statute's purpose and the population classification established, otherwise the classification will be deemed arbitrary, e. g., Dearborn v. Johnson, 234 Ala. 84, 173 So. 864 (1937). The case of Couch v. Rodgers, 253 Ala. 533, 45 So.2d 699 (1950) reviews many of our decisions on this point, in some of which we reasoned that the circumstance of size did bear a reasonable relationship to the purpose of the legislation. But we are unable to ascertain in this case such a relation. The purpose of § 660 is to provide governmental immunity, but that immunity is to be granted only to the largest city in the largest county in the state. If there is any reasonable relationship between the grant of immunity and the size of its population as denoted by its corporate boundaries, we are unable to perceive it. "Judicial ingenuity would exhaust itself in an effort to find any rational basis for the classification it presents." City of Birmingham v. Moore, 248 Ala. 422, 425, 27 So.2d 869, 872 (1946). Such a classification, moreover, arbitrarily denies to citizens the right to pursue against that city remedies for injuries to person and property resulting from the exercise of its governmental functions, while they are free to pursue those same remedies against all others, as we shall show later. This results in a denial of equal protection of the laws, United States Constitution, Article Fourteen, because it constitutes an irrational difference in the treatment of our citizens, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); accord, Comer v. City of Mobile, 337 So.2d 742 (Ala., 1976).
We hold, therefore, that § 660 is unconstitutional under both the federal and state constitutions. It violates the equal protection principle and, because of its unreasonable population classification, it cannot qualify as a general law of local application.
It is also maintained that § 660 violates the provisions of Article 4, § 105, Alabama Constitution of 1901, in view of the earlier enactment of what is now Tit. 37, §§ 502-504, Alabama Code (now § 11-47-190-192, Code of Ala. 1975):
No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer or employe[e] of the municipality engaged in work therefor and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts, or the negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured.
Article 4, § 105, Alabama Constitution of 1901 mandates that:
[N]o . . . local law, . . . shall be enacted in any case which is *811 provided for by a general law, . . . nor shall the legislature indirectly enact any . . . local law by the partial repeal of a general law.
The Alabama Constitution, § 110, defines a general law as one "which applies to the whole state," and a local law as one "which applies to any political subdivision or subdivisions . . . less than the whole;. . ."
If the interpretation of § 105 were being addressed presently for the first time it would be less onerous to give a literal meaning to the language used. We are faced with a more difficult task, however, in view of the numerous instances in the past in which this Court has approved local enactments on subjects already covered by general acts, e. g., Dudley v. Birmingham Ry., Light & Power Co., 139 Ala. 453, 36 So. 700 (1903); Brandon v. Askew, 172 Ala. 160, 54 So. 605, 607 (1911); Board of Revenue v. Kayser, 205 Ala. 289, 88 So. 19 (1921); Mathis v. State, 280 Ala. 16, 189 So.2d 564 (1966); Dunn v. Dean, 196 Ala. 486, 71 So. 709 (1955); State ex rel. Jones v. Steele, 263 Ala. 16, 81 So.2d 542 (1955); Malone v. State, 46 Ala.App. 363, 242 So.2d 409 (1970).
With conscious regard to the doctrine of stare decisis et non quieta movere, nevertheless our duty is to apply the highest law in our state as conscientiously as our abilities allow, even though this application runs counter to reasons which heretofore have been espoused for opposite views. In so doing we perform only our judicial function and do not encroach upon the separation of powers doctrine which makes the legislative branch supreme in legislative matters. Indeed, in performing that duty we only re-assert the axiom of the supremacy of our organic law over all branches of government. State Docks Commission v. State ex rel. Cummings, 227 Ala. 414, 150 So. 345 (1933). If we entertained any doubt upon the meaning of § 105, we would, of course, accord a weighty consideration to the legislative interpretation which has been manifested through the years by the passage of numerous local laws on subjects already affecting those localities through general laws. Jansen v. State ex rel. Downing, 273 Ala. 166, 137 So.2d 47 (1962). But the fact that a class of statutes has been in existence for a long time and considered constitutional does not prevent this Court from declaring them unconstitutional. Sadler v. Langham, 34 Ala. 311 (1859). If a legislative act is repugnant to the Constitution, the courts not only have the power, but it is their duty, when the issue is properly presented, to declare it so. State ex rel. Bassett v. Nelson, 210 Ala. 663, 98 So. 715 (1924); Dyer v. Tuskaloosa Bridge Co., 2 Port. 296, 27 Am.Dec. 655 (1835).
The only phrase in the pertinent portion of § 105 requiring construction is "provided for." "Provided" ordinarily signifies a condition, or a limitation, qualification, or a restraint or exception. Stanley v. Colt, 5 Wall. 119, 72 U.S. 119, 18 L.Ed. 502 (1886), and, in context, it may mean "of the same import." Webster's Third International Dictionary (G. & C. Meriam Co., 1971); Webster's New Collegiate Dictionary (G. & C. Meriam Co., 1973); Abbott, Dictionary of Terms and Phrases (Little, Brown & Co., 1879). When we see the phrase "provided for" preceded by the words "No . . . local law," we are bound to consider the phrase as one of restraint and limitation pertaining to matters of the same import dealt with in the general law. Section 105, then, is an additional constitutional proscription upon the type or kind of legislation which the legislature is allowed to enact, following as it does § 104 which also contains limitations upon the legislative power. Nothing in either section prohibits all local legislation, see §§ 106 and 107, but only that prohibited by §§ 104 and 105.
Notwithstanding the unclouded language expressed in § 105, nevertheless it has prompted a large amount of litigation, beginning as early as 1903 and continuing as *812 late as 1976. Dudley v. Birmingham Ry., Light & Power Co., 139 Ala. 453, 36 So. 700 (1903); Parrish v. Stembridge, 337 So.2d 754 (Ala., 1976). Historically this Court has felt it necessary to construe this language, apparently to assure that the separation of powers doctrine would not be inhibited and that the legislative branch of state government would continue to be supreme in legislative matters. State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31 (1913). Thus this Court in an early case held that § 105 was intended:
[T]o prohibit the enactment of special, private, or local laws to meet the purposes of particular cases which may be accomplished by proceedings outside of the Legislature under the provisions of general statutes enacted to meet all cases of that general character. . . . Brandon v. Askew, 172 Ala. 160, 54 So. 605, 607 (1911).
This explanation has been utilized in other cases, e. g., Dunn v. Dean, 196 Ala. 486, 495, 71 So. 709 (1914); Walker County v. Barnett, 247 Ala. 418, 24 So.2d 665 (1946).
Another construction was placed upon § 105 in Board of Revenue v. Kayser, 205 Ala. 289, 88 So. 19 (1921). In that case this Court referred to the Proceedings of the Constitutional Convention, p. 114, for an explanation by one of the commentators:
'Now is there any hardship [in] saying to any man, any individual, corporation or association, that if the laws of the state have already provided for your case and you can get everything you could possibly get by appealing to the Legislature, you ought not to consume the public time in trying to get the Legislature to do what has already been done for you. That is all this provision means.' . . .
Those proceedings have been recognized, of course, as proper aids in constitutional construction. City of Montgomery v. Graham, 255 Ala. 685, 53 So.2d 363 (1951). The import of the explanation, however, was that § 105 was designed simply to prevent duplication in legislative enactments. This reasoning was followed in State ex rel. Brandon v. Prince, 199 Ala. 444, 74 So. 939 (1917) which resulted from a change in the general law regarding the selection of jurors by legislating a different procedure for Tuscaloosa County. Our Court observed:
If we should hold that, merely because there is a general law providing for the selecting and drawing of juries for the several counties, none of its provisions can be changed by a local law, it would be tantamount to holding that a local law cannot be passed upon that subject. We do not think that this is the meaning of section 105 of the Constitution, nor that such was the intent of the Constitution framers in ordaining it.
From this recognition favoring local laws enacted on the same subject of the general law, it was a short judicial step to the present explanation:
If, in the judgment of the Legislature, local needs demand additional or supplemental laws substantially different from the general law, the Legislature has power to so enact. Courts are charged with the duty to determine whether there is a substantial difference between the general and the local law, but cannot invade the legislative domain to determine whether a county should have a local law substantially different and in addition to the state law. . . . Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 235, 124 So. 523, 526 (1929).
To summarize, this Court has interpreted § 105 in at least three different ways: (1) It was intended to prevent local laws whose purposes might be accomplished outside the legislature; (2) It was intended to prevent duplication in legislative enactments; and (3) It was not intended to prevent the enactment of a local law on a subject already covered by a general law, when the local law is substantially different from the general law.
These differences present more than a mere play on words. If the facts in State ex rel. Brandon v. Prince, supra, are used as *813 an example, the legislature changed the manner of statewide jury selection by establishing a different procedure in Tuscaloosa County. While the subject-matter of jury selection was already covered by general law, it might also be said that the different procedures established by the local law created a substantial difference between the local and general laws. Likewise, in Standard Oil Co. v. Limestone County, supra, the legislature authorized one county to impose a gallonage tax on gasoline sales even though there was already in existence a statewide gallonage tax. That Court found that this local tax was not "the same tax" (and thus there was a substantial difference), however, it cannot be reasonably maintained that the two laws did not concern the same subject matter because each provided for a gallonage tax on gasoline sales. In neither case was duplication present because there was a substantial difference between the two due to the effect of the local law. Indeed, it may be stated that every case involving a change in a general law by a local legislative act creates a "difference" which some could describe as "substantial," and that "substantial difference" might in any case justify the conclusion, therefore, that the local law does not concern the same subject matter.
Being a limitation upon legislative authority, § 105 clearly means just the opposite of what the Court in State ex rel. Brandon v. Prince, supra, held that it meant. In the quotation we have noted earlier, that Court placed more emphasis upon the efficacy of local laws, and less upon that of general laws, than § 105 obviously intended to give them, for the Court stated "[i]f we should hold that, merely because there is a general law . . .." 199 Ala. at 447, 74 So. at 941 (emphasis added). We do not look upon the presence of a general law upon a given subject as a bare segment, but to the contrary, its presence is primary, and means that a local law cannot be passed upon that subject. By constitutional definition a general law is one which applies to the whole state and to each county in the state with the same force as though it had been a valid local law from inception. Its passage is none the less based upon local considerations simply because it has a statewide application, and already having that effect, the constitutional framers have prohibited the enactment of a local act when the subject is already subsumed by the general statute.
Thus, in this case, the legislature had already enacted a statute of statewide application on the general subject of municipal immunity for torts. Title 37, §§ 502-504, making municipalities liable in tort, was originally enacted as a general law in 1907. Judicial limitation of its application was eliminated by judicial decision on July 10, 1975 when this Court overruled prior decisions construing the legislation to prohibit suits against cities when engaged in a governmental function. Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). Following the enactment of this statewide statute dealing with the subject of municipal liability in tort, the precursor of the present § 660, i. e., Act 257, § 13 Acts of Alabama, Regular Session 1915, became law. That Act dealt with a subject of the same import as the 1907 Act, that is, the subject of municipal liability in tort. To be sure, in its original form it was limited to cities with populations of one hundred thousand or more according to the Federal Census. Acts bearing such population classifications in the past have been classified as statewide Acts of local application, on the theory that they would automatically apply in the future to additional territorial subdivisions as their population increased. Masters v. Pruce, 290 Ala. 56, 67, 274 So.2d 33 (1973) contains a list of cases involving such legislation and in which this Court held that those laws were constitutional. Even though the entire law was enacted as a statewide act of local application, clearly it was intended to apply to Birmingham (whose population we judicially know to *814 have been 132,685 in 1910 and 178,806 in 1920, U. S. Bureau of the Census, 1970, Vol. I, Characteristics of the Population, Part A, Sec. 1, Table 28, p. 116), and, according to Tit. 62, § 1, Alabama Code of 1940 (Recomp. 1958) is one applying to less than the whole state.
But the defendant insists that any objection to the character of § 660 has been resolved by subsequent legislative action and judicial opinion thereon. Specifically, we are referred to the adoption of Title 62 (including § 660) as a part of the entire Code of 1940 which was adopted by the legislature in a single act. In Jenkins v. State, 245 Ala. 159, 16 So.2d 314 (1944) this Court held that "the Code as a whole provides a system of law applicable to the [whole] state," and in Burns v. State, 246 Ala. 135, 19 So.2d 450, 453 (1944) this Court reiterated that conclusion by observing "that when the Act was passed by the legislature, adopting the Code of 1940 in its entirety, a general law was enacted." Under this blanket of general statewide application of what originally were local laws, of course, we would not presently declare that § 660, or any other acts existing at that time are deficient under § 105 of the Alabama Constitution of 1901, however questionable they now appear to be. Indeed, legislation of local application adopted after these decisions may have been in response, at least in part, to such court approval.
However, we must take particular note of the fact that the body of local acts present in the Alabama Code of 1940 (Recomp. 1958) and enacted since that Code's original enactment were not adopted by the legislature when it enacted the Code of Alabama 1975. See Tables, Vol. 2, Code of Ala. 1975. This action removed from the statewide influence of the Code of 1940 any legislation which may follow the enactment of the Code of 1975 and which is local legislation by constitutional definition.
Therefore we respectfully direct the legislature's attention to the fact that § 110 of the Alabama Constitution mandates the definition of a local law. It is one "which applies to any political subdivision or subdivisions of the state less than the whole; . . ." (emphasis added). Applies when? Obviously, when it becomes law! If, when it becomes law it applies only to a subdivision of the state, it is a local law. That is the clear meaning of the language employed by our constitutional framers. In the face of this plain language, to conclude that the application of a law to less than the entire state makes no difference when a futuristic population classification is employed is to engage in sophistic reasoning. We reject such reasoning in favor of the clear definition of a local act which is contained in the Constitution. A population classification cannot be utilized in the future to avoid the definition of a local act.
We are mindful of prior decisions which have approved enactments based upon population classifications when the classifications were found to be "substantial," were not "arbitrarily" fixed, and were based upon a "reasonable necessity" for the several classifications. E. g., Dearborn v. Johnson, 234 Ala. 84, 173 So. 864 (1937). No citation of authority is necessary to demonstrate the elusive nature of such a judicial test, or to point out that a number of these cases might have been decided either way. The specificity of the constitutional framers manifested by §§ 104, 105 and 110 discloses their intent, and negates tolerance with any such tests which give to both courts and legislature such wide discretion. Henceforth when at its enactment legislation is local in its application it will be a local act and subject to all of the constitutional qualifications applicable to it. With regard to legislation heretofore enacted, the validity of which is challenged, this Court will apply the rules which it has heretofore applied in similar cases.
With deference to those members of this Court who in the past have been concerned that such a construction would impinge upon the legislative power to enact local legislation, we must observe that such is not the case. As we have shown, our Constitution *815 authorizes local legislation, and sets out a procedure for its enactment. Under that authorization local legislation reflecting responses to local needs may be enacted. It is only when those local needs already have been responded to by general legislation that § 105 of our state Constitution prohibits special treatment by local law.
Because the trial court erred in granting the defendant's motions to dismiss the plaintiffs' complaints, these cases must be reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., concurring specially.
MADDOX, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
BLOODWORTH, J., concurring in part, dissenting in part.
TORBERT, Chief Justice (concurring specially):
I concur in the result based upon the denial of equal protection under the law as to these plaintiffs.
As I understand the majority in its interpretation of §§ 105 and 110 of the Constitution as applied to the issues in these cases, this decision will have prospective application. That is, with respect to statutes heretofore enacted by the Legislature their constitutionality would be measured by those elusive standards heretofore set forth in the many decisions of this court over the past seventy years. The principle of prospective application is not of recent vintage, but was recognized by this court as early as 1890. Farrior v. New England Mortgage Security Co., 92 Ala. 176, 9 So. 532 (1890). The rule of stare decisis is founded upon the principle of conservatism but was never intended to prevent progress in the science of the law. Neither does the rule disregard the importance or necessity of correct determinations of the law, nor require its perpetuated subversion.
The Legislature is now in its last regular session of the members' term of office. In order to accord that body the effect of the principle of stare decisis as they represent the people in legislative matters it would seem preferable to make this decision effective upon the conclusion of this regular session. This would allow time for that body to publicly advertise for passage of local legislation where permissible, undertake a careful study as to the effect of this decision, and embark on its legislative process at the beginning of its first regular session at the next term of the Legislature under this settled construction of our Constitution.
The constitutional issue as to whether any general law of local application based upon population is a local law under § 110 of the Constitution is clearly presented. That issue is now decided, and the law henceforth should be well settled. However, further judicial refinement and interpretations in other cases may well be necessary with respect to the application of § 105 prohibiting the Legislature from enacting local laws where the subject matter has been "provided for by a general law."
BLOODWORTH, Justice (concurring in part, dissenting in part.)
I concur only in so much of the Court's opinion which holds that § 660, Tit. 62, Code of 1940, is unconstitutional because it violates the equal protection clause of both the federal and state constitutions. This is as much as the Court needs to say, and as far as the Court needs to go, to decide this case, in my judgment.
Thus, I cannot join the Court in the remainder of its decision, and I respectfully dissent therefrom. For over 70 years this Court has been committed to the proposition of upholding general acts of local application. Parrish v. Stembridge, 337 So.2d 754 (Ala. 1976); Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523 (1929); State ex rel. Crenshaw et al. v. Joseph et al., 175 Ala. 579, 57 So. 942 (1911); Griffin v. Drennen et al., 145 Ala. 128, 40 So. 1016 (1906). I think it unwise, at this time, to depart from such settled construction.