494 So.2d 584 (1986)
BALDWIN COUNTY
v.
Richard M. JENKINS and Alton White.
85-412.
Supreme Court of Alabama.
Decision Announced March 31, 1986.
Opinion Released April 4, 1986.
Rehearing Denied August 12, 1986.
*585 Young Dempsey, Spanish Fort, for appellant.
Allan R. Chason of Chason & Chason, Bay Minette, and Julian B. Brackin of Brackin & Chandler, Foley, for appellees.
BEATTY, Justice.
This is an appeal by the defendant, Baldwin County, from a judgment declaring that Act No. 84-639, 1984 Ala.Acts (1984 Reg.Session), is in conflict with Ala.Code 1975, § 11-3-1 (1984 Cum.Supp.) and is, therefore, unconstitutional. We reverse and remand.
Plaintiffs, Richard M. Jenkins and Alton White, are members of the Baldwin County Commission, serving as commissioners for Districts 1 and 3. They were elected pursuant to Act No. 84-639, which provided that those commissioners elected in November 1984 (Districts 1 and 3) would each serve a two-year term and that at the next election, in November 1986, all terms would be for four years.
Act No. 84-639 reads:
"AN ACT
"Relating to Baldwin County and the term of office for county commissioners; and repealing conflicting laws.
"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
"Section 1. In Baldwin County, any law to the contrary notwithstanding, the county commissioners elected in November whose terms of office commence January 1985, shall serve two years, and each commissioner elected thereafter shall serve for a term of four years each. Elections shall be held accordingly.
"Section 2. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
"Section 3. All laws or parts of laws which conflict with this act are hereby repealed.
"Section 4. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."
(The effect of Act No. 84-639 was to do away with the staggered term method of elections which had previously been in existence in Baldwin County.)
Subsequent to the election, Senate Bill 622 was introduced; it was intended to extend the terms of plaintiffs from two to four years. Senate Bill 622 read:
"A BILL TO BE ENTITLED AN ACT
"Relating to Baldwin County; amending Act No. 84-639, H. 981, 1984 Regular Session, which provides for the term of office for certain county commissioners so as to provide further for said terms.
"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
"Section 1. Section 1 of Act No. 84-639, H. 981, 1984 Regular Session, is hereby amended to read as follows:
"`Section 1. In Baldwin County, any law to the contrary notwithstanding, the county commissioners elected in November whose terms of office commence January 1985, shall serve four years, and each commissioner elected thereafter shall serve for a term of four years each. Elections shall be held accordingly.'
"Section 2. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."
In Opinion of the Justices No. 316, 469 So.2d 112 (Ala.1985), this Court advised that the act proposed by the bill would be duplicative of § 11-3-1, and, as such, would be unconstitutional, as violative of Article 4, § 105, of the Alabama Constitution of 1901, which states: "No ... local law ... shall be enacted in any case which is provided by a general law."
Section 11-3-1, as amended, provides in part:

*586 "Unless otherwise provided by local law, there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and hold office for four years from the first Monday after the second Tuesday in January next succeeding their election and until their successors are elected and qualified."
This Court pointed out in a footnote to the advisory opinion that the constitutionality of Act No. 84-639 was not under consideration at that time.
On October 15, 1985, plaintiffs filed a declaratory judgment action in the Baldwin Circuit Court, seeking to have determined the constitutionality of Act No. 84-639. The case was heard on December 9, 1985, and all evidence presented to the court was in the form of stipulations entered into by the parties. On December 12, 1985, the court ruled that Act No. 84-639 was violative of Article 4, § 105, of the Alabama Constitution, and, therefore, that the terms of office of plaintiffs were four years. Defendant, the county, then filed this appeal.
Defendant raises several issues; however, we need only address the central issue of whether Act No. 84-639 is violative of § 105, quoted supra. We hold that it is not.
Alabama Constitution, Article IV, § 110, previously defined a "general law," a "local law," and a "special" or "private law" as follows:
"A general law within the meaning of this article is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association, or corporation."
In 1982, however, § 110 was changed by Amendment No. 397. "General," "local," and "special" or "private" laws are now defined as follows:
"A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class....
"...
"A special or private law is one which applies to an individual, association or corporation. A local law is a law which is not a general law or a special or private law."
In Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), this Court interpreted § 105, supra, in accord with its express and obvious meaning, contrary to at least three different interpretations previously applied to § 105 by this Court in upholding numerous local laws contrary to or duplicative of general laws on the same subject. After reviewing these various interpretations, this Court in Peddycoart, at 813, explained:
"We do not look upon the presence of a general law upon a given subject as a bare segment, but to the contrary, its presence is primary, and means that a local law cannot be passed upon that subject. By constitutional definition a general law is one which applies to the whole state and to each county in the state with the same force as though it had been a valid local law from inception. Its passage is none the less based upon local considerations simply because it has a statewide application, and already having that effect, the constitutional framers have prohibited the enactment of a local act when the subject is already subsumed by the general statute." (Emphasis in original.)
Subsequent to the Peddycoart decision, the legislature amended § 11-3-1 to add the language "[u]nless provided by local law." The Association of County Commissions drafted the proposed legislation to amend § 11-3-1, and, according to the following statement contained in its 1980 legislative program, the amending language was added so that local laws concerning county commissions could be passed without *587 violating this Court's decision in Peddycoart:
"This bill would amend numerous sections of Title 11 of the Code of Alabama concerning County Government. At the present time, because of Peddycoart v. City of Birmingham, the legislature cannot pass local laws concerning composition, term, compensation, etc. of county commissions in Alabama. This bill would provide that the legislature could pass such local laws."
As discussed above, Ala. Const. (1901), Art. IV, § 110 (amended 1982), defines a "general law" as "a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class." (Emphasis added.) Without question, § 11-3-1, as amended, is a general law because, by its terms and effect, it applies to the whole state. It does not apply any less to the entire state merely because it recognizes the power of the legislature to enact contrary local laws on the subject. Additionally, under the language of Amendment No. 397, § 11-3-1, as amended, is not a special or private law; nor is it a local law, because, by its terms, it applies to "every county."
Moreover, § 11-3-1, a general law, does by its express terms, recognize, sanction, and yield to contrary local laws. Thus, by adding the amendatory language in 1980, the legislature has made it clear that it does not intend or require that the "subject" of § 11-3-1 be exclusively "subsumed" within that statute. In other words, by amending § 11-3-1, the legislature has clearly indicated that the presence of § 11-3-1 is not necessarily primary, and local laws can be passed upon that subject. (See quote from Peddycoart, supra.)
A situation completely opposite and contrary to the one presented here was contemplated and prohibited by the constitutional framers, which is to say that the legislature, by enacting a general law containing no such provision or exception for contrary local laws, thereby intended that general law to be primary and the subject subsumed entirely by the general law. In that situation, § 105 does operate to prohibit the enactment of contrary local laws. Such is not the case with respect to § 11-3-1 and Act No. 84-639. Because the language of the statute provides for the existence of and prevailing effect of contrary local laws, it must be that the legislature did not intend the subject to be "subsumed" exclusively within § 11-3-1. That being the case, the co-existence of the general law (§ 11-3-1) and the contrary local law (Act No. 84-639) deferred to in the general law, cannot be said to be repugnant to § 105 because "the constitutional framers have [only] prohibited the enactment of a local act when the subject [as intended by the legislature] is already subsumed by the general statute." Peddycoart, supra.
Plaintiffs argue that the judgment is due to be affirmed based on Opinion of the Justices No. 316, supra. They contend that since this Court, relying on Peddycoart, concluded that the act proposed by Senate Bill 622 would have been unconstitutional because its subject matter was subsumed by § 11-3-1, Act No. 84-639 is defective for the same reason. We disagree. Senate Bill 622 proposed an act duplicative of § 11-3-1; Act No. 84-639 is not duplicative. Section 11-3-1 contains the language "[u]nless otherwise provided by local law" (emphasis added), which indicates a recognition of local laws with provisions different from or contrary to those contained in § 11-3-1, not identical to or duplicative of § 11-3-1.
Plaintiffs alternatively contend that Peddycoart dictates affirmance of the trial court's judgment because Ala.Code 1975, § 36-3-4, which is also a general law, deals with the terms of office of county commissioners, and sets those terms at four years. Therefore, they argue, Act No. 84-639 conflicts with § 36-3-4 and for this reason must be declared unconstitutional.
Section 36-3-4 provides:

*588 "The sheriff, one coroner, members of county commissions, one county treasurer, when elective, and one constable for each election precinct shall hold their respective offices for the term of four years from the first Monday after the second Tuesday of January next after their election and until their successors are elected and qualified."
We agree with defendant that because this section must be construed in pari materia with § 11-3-1, it must give way to § 11-3-1, which is the more particular section more recently amended. Where two statutes are related to the same subject and embrace the same matter, a specific or particular provision is controlling over a general provision. Green v. Fairfield City Board of Education, 365 So.2d 1217 (Ala.Civ.App.1978), cert. denied, 365 So.2d 1220 (Ala.1979). Special statutory provisions on specific subjects control general provisions on general subjects. Cooper Transfer Company v. Alabama Public Service Commission, 271 Ala. 673, 127 So.2d 632 (1961). Here, § 36-3-4 deals with county officers in general, whereas § 11-3-1 deals specifically with county commissioners' terms of office.
Moreover, in cases of conflicting statutes on the same subject, the latest expression of the legislature is the law. Middleton v. General Water Works & Electric Corporation, 25 Ala.App. 455, 149 So. 351, cert. denied, 227 Ala. 219, 149 So. 352 (1933). Where a conflict exists between statutes, the last enactment must take precedence. Laney v. Jefferson County, 249 Ala. 612, 32 So.2d 542 (1947). Clearly, § 11-3-1, as amended, is the latest legislative expression relating to terms of county commissioners, and the legislature has provided for such terms to be altered by local act.
Where a statute may be given two reasonable constructions, this court should apply the construction which will uphold, and not defeat, the legislative will. Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523 (1929).
Based on the foregoing, we conclude that the trial court erred in its judgment that Act No. 84-639 is unconstitutional. Accordingly, the judgment below is reversed, and the cause remanded for entry of an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER,[*] SHORES and HOUSTON,[*] JJ., concur.
MADDOX, JONES, ALMON and ADAMS, JJ., dissent.
ADAMS, Justice (dissenting).
I respectfully dissent. As laudable as I view the purposes of the legislature in enacting Act No. 84-639 (1984 Reg.Session), it nevertheless is unconstitutional because it runs afoul of Art. 4, § 105, of the Alabama Constitution of 1901, which states: "No ... local law ... shall be enacted in any case which is provided for by a general law...." The laudable purpose of Act No. 84-639, was to eliminate the staggered term method of election in Baldwin County. It was thought that by making some of the commissioners run for two-year terms, and then run again two years later for four-year terms with other commissioners running for four-year terms, this would soon have all commissioners running for four-year terms at the same time, consistent with what is being done in the rest of the state.
However, the general law on this subject was codified in Code 1975, § 11-3-1. This section, prior to a 1980 amendment, provided as follows:
There shall be in every county a county commission, composed of the judge of probate and four commissioners, who shall be elected at the time prescribed by law and hold office for four years from the first Monday after the second Tuesday in January next succeeding their election and until their successors are elected and qualified.
*589 Baldwin County admits that if this were the law presently, Act No. 84-639 would be unconstitutional because of this Court's decision in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), wherein we said that any local law the subject of which has already been addressed in a general law is unconstitutional. However, counsel for the defendant aptly point out that § 11-3-1 was amended in 1980 to allow for the enactment of legislation such as Act No. 84-639. As amended, § 11-3-1 reads:

Unless otherwise provided by local law, there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and hold office for four years from the first Monday after the second Tuesday in January next succeeding their election and until their successors are elected and qualified. [Emphasis added.]
Indeed, Baldwin County says that Code 1975, § 11-3-1, was amended for the express purpose of getting around this Court's decision in Peddycoart. The Association of County Commissions which drafted the proposed legislation to amend § 11-3-1, wrote in its 1980 program:
This bill [which ultimately became Act 84-639] would amend numerous sections of Title 11 of the Code of Alabama concerning County Government. At the present time, because of Peddycoart v. City of Birmingham, the legislature cannot pass local laws concerning composition, term, compensation, etc., of county commissions in Alabama. This bill would provide that the legislature could pass such local laws. The bill also raises the amount of temporary indebtedness a county can incur from $100,000.00 to $200,000.00. The bill is now in the Ways and Means Committee in the House and the Governmental Affairs Committee in the Senate.
It is against this factual background, an admitted ploy to get around Peddycoart v. City of Birmingham, and, thus, the effect of § 105 of the Constitution, that we decide this case. Prior to Peddycoart, there were numerous ingenious ways contrived to get around the constitutional prohibition. It was the understanding of both bench and bar that Peddycoart signaled the end of these contrivances, at least for the future. Now, we have the latest ploya general law which provides for a local law that could be inconsistent with it. Baldwin County argues that there cannot be any inconsistency in this approach, since the Legislature had the power to repeal the general law entirely. I have no quarrel with the fact that the Legislature could repeal the Act entirely. The fact is, though, that the Legislature in this case did not repeal the Act entirely, but allowed for a partial repeal of the Act on a local basis. This is exactly what § 105 of the Constitution finds abhorrent.
One of the fundamental axioms of the law is that one cannot do indirectly what one cannot do directly. If Act No. 84-639 was unconstitutional before § 11-3-1 was amended to provide for local acts, it likewise is unconstitutional after the amendment to § 11-3-1. Our Constitution, in § 105, even anticipated that such would be attempted; that section further provides:
... nor shall the legislature indirectly enact any such ... local law by the partial repeal of a general law.
If the above procedure is to pass constitutional muster, as this Court today says it does, then the mandate in Peddycoart v. City of Birmingham shall have come unraveled. In the future it will probably become ragged in many places which we cannot presently discern. The problem which the legislature was attempting to correct in this instance should have been corrected by a constitutional amendment voted on by the people. That was the method used when our municipalities sought to effect needed changes for their smoother operation.
MADDOX, JONES and ALMON, JJ., concur.
NOTES
[*] Although Justices Faulkner and Houston did not sit at oral argument, they have studied the record and briefs and have listened to the tape of oral argument.