* This opinion was originally published at 510 So.2d 843. It is published here as corrected.
The appellant, David Randle, an inmate of the Alabama prison system, was convicted of first degree escape on July 26, 1984, and sentenced to life imprisonment under the Habitual Offender Act. The conviction was affirmed by the Court of Criminal Appeals on May 27, 1986, and Randle filed an application for a rehearing. The Court of Criminal Appeals then remanded the case to the Circuit Court of Elmore County because of improper sentencing. 554 So.2d 1124. Randle's principal argument is that the Court of Criminal Appeals erred when it found that no fatal variance existed between the indictment for escape and the proof offered by the State. He asks this Court to reverse his conviction for escape. We affirm. *Page 1132 
The facts reveal that Randle was serving a sentence at the Staton Correctional Facility for receiving stolen property. At the time of the escape, however, Randle was at the J.F. Ingram State Technical School, a facility where prison inmates receive vocational training. A Department of Corrections employee testified that Randle was found to be missing on September 29, 1983, after a roll call and was captured a short time later.
The indictment alleged:
 "The Grand Jury of said County charge that before the finding of this indictment, David Randle, whose true name is to the Grand Jury unknown, otherwise than as stated, having been convicted of a felony, to-wit: Receiving Stolen Property, did escape, or attempt to escape from custody imposed pursuant to that conviction from a penal facility, to wit: J.F. Ingram State Technical School, in violation of Section 13A-10-31
of the Code of Alabama."
J.F. Ingram State Technical School is not a facility where prison inmates are housed; it is located some five miles from Staton Correctional Facility, the facility at which Randle was in custody at the time of the escape. The sole function of the school is to provide vocational instruction. Randle argues that a fatal variance occurred when the State failed to prove that J.F. Ingram State Technical School was a penal facility and that he was in the school's custody on September 29, 1983.
It has been held previously that a fatal variance existed between an indictment that charged that the defendant had escaped from a prison camp and proof that he had actually escaped from the custody of a prison guard while working in a road gang 12 miles from the prison. Owens v. State, 46 Ala. App. 591, 246 So.2d 478 (Crim.App. 1971). In Owens, Judge Almon (then sitting on the Court of Criminal Appeals) wrote:
 "No proposition of law is more fundamental than the one requiring that the proof at trial must correspond with the material allegations of the indictment. Stone v. State, 115 Ala. 121, 22 So. 275; Prentice v. State, 24 Ala. App. 587, 139 So. 437; Garner v. State, 3 Ala. App. 161, 57 So. 502; Ashby v. State, 24 Ala. App. 466, 136 So. 483; State v. Plunket, 2 Stew. [Ala.] 11."
Id., 46 Ala. App. at 591, 246 So.2d at 478. In Brantly v. State,340 So.2d 902 (Ala.Crim.App. 1976), a fatal variance was found to exist between the indictment that alleged the defendant had escaped or had attempted to escape from the State penitentiary and the proof that he had, in fact, escaped from the Shelby County Jail. Id., at 903. In Ex parte Behel, 397 So.2d 163
(Ala. 1981), this Court held that because the indictment failed to allege that the defendant had been convicted of any criminal offense and had been sentenced to the State penitentiary, he could not be convicted of escape under Ala. Code (1975), § 13-5-65. Id., at 164.
Randle argues that the provision in his indictment referring to J.F. Ingram as a penal facility, and implying that he had escaped from the custody of the J.F. Ingram State Technical School, was a material part of the indictment not proved by the State and, therefore, that there was a fatal variance. We agree with Judge Almon's observation in Owens that "proof at trial must correspond with the material allegations of the indictment"; however, in the present case, we do not believe that the reference in the indictment to the J.F. Ingram State Technical School as "a penal facility" was a material allegation. In Summers v. State, 348 So.2d 1126
(Ala.Crim.App.), cert. denied, 348 So.2d 1136 (Ala. 1977), cert.denied, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978), Judge Harris wrote of the elements required in an indictment to assure due process:
 "An indictment should be specific in its averments in four prime aspects to insure this guaranty: (a) to identify the accusation lest the accused should be tried for an offense different from that intended by the grand jury; (b) to enable the defendant to prepare for his defense; (c) that the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy *Page 1133 
for the same offense, and (d) to enable the Court, after conviction, to pronounce judgment on the record."
348 So.2d at 1132. In the present case, Randle was in the custody of the State Department of Corrections at all times prior to his escape. The indictment for escape states clearly that Randle had been convicted of a felony, namely receiving stolen property, and that he escaped or attempted to escape "from custody imposed pursuant to that conviction." Appellant argues that because he was not in the custody of J.F. Ingram State Technical School, but was assigned to Staton Correctional Facility, a fatal variance existed between the indictment and the proof. We disagree. Randle was present at J.F. Ingram State Technical School immediately before his escape. Unlike the indictment in Owens, the indictment in this case did not incorrectly state that the appellant had escaped or attempted to escape from the prison. Although the indictment does
improperly identify J.F. Ingram State Technical School as a penal facility, it does not say that Randle was in the custody of the school, only that he escaped from the school while in custody pursuant to his conviction for receiving stolen property. We agree with the Court of Criminal Appeals on this point:
 "By the second part of the argument of counsel for appellant, he contends that 'Defendant was in the custody of Staton Correctional Facility, not J.F. Ingram State Technical School at the time of the alleged escape.' Even though there is some merit also in the second contention of appellant's attorney, we are not persuaded that there was a fatal variance between the indictment and the evidence. The undisputed evidence shows that the conduct of the defendant that constituted the alleged escape or attempt to escape from custody occurred at J.F. Ingram State Technical School. The averment of the name of the place of the escape or attempted escape as J.F. Ingram State Technical School served no good purpose other than to inform defendant, as it did and should have done, of the location of the alleged escape or attempt to escape."
We conclude, therefore, that the appellant's reading of the indictment is incorrect and that it does not identify J.F. Ingram State Technical School as Randle's custodian at the time of his escape. The reference in the indictment to J.F. Ingram State Technical School as a penal facility, although incorrect, is not a material allegation of the indictment and does not create a fatal variance. The State proved that Randle was in custody pursuant to his felony conviction for receiving stolen property and that he escaped from custody while he was at J.F. Ingram State Technical School. The indictment in this case satisfies the criteria set forth in Summers and did not deny the appellant due process.
The appellant also alleges: (1) that the trial court erred in permitting Betty Taylor, the Department of Corrections' Director of Inmate Records, to testify that Randle was serving a 15-year sentence for receiving stolen property; (2) that the trial court erred in admitting a trial docket sheet from Jefferson County; and (3) that the Court of Criminal Appeals erred in holding that Act No. 1071, 1971 Ala. Acts, is valid.
At trial, appellant's counsel, G. Houston Howard, objected to Ms. Taylor's failing to testify that it was within the regular course of business for the Alabama Department of Corrections to make such a memorandum or record of whether David Randle was an inmate of the Alabama Prison System on September 29, 1983, as provided in Ala. Code (1975), § 12-21-43. The trial court allowed the State to conduct the following exchange on direct examination:
 "Q. I ask you to look into that file and tell me whether or not David Randle was an inmate in the Alabama prison system on September 29, 1983?
 "MR. HOWARD: Your honor, we object. That's not the best evidence. It has not been shown that it was the regular course of business to keep this and that it was kept in the regular course of business.
"THE COURT: Overrule objection. Let's proceed.
"Q. On September 29, 1983?
"A. Yes, sir, he was. *Page 1134 
 "Q. Okay. What sentence was he serving? What was the charge?
 "MR. HOWARD: We object to that, Your Honor. That's not the way to prove a conviction. That's not the best evidence.
 "THE COURT: She can testify whether or not he was serving at that time.
"MR. HOWARD: You overrule the objection?
 "THE COURT: I didn't say that. I said the best evidence is what he was convicted of. You asked that [sic] that was not the best evidence.
"MR. HOWARD: Yes, that question —
 "THE COURT: If she had a record, she can testify from the record.
"MR. HOWARD: So you overrule the objection?
"THE COURT: Yes, I do.
"MR. HOWARD: Okay.
 "Q. According to your records, was David Randle an inmate on September 29, 1983?
"MR. HOWARD: We renew the objection.
"THE COURT: Overrule the objection.
"A. Yes, sir.
 "Q. And according to your records what was he serving —
"MR. HOWARD: We renew the objection.
"THE COURT: I overrule the objection.
 "A. He was serving a 15-year term for receiving stolen property.
"Q. What county was that?
"A. Jefferson County."
Appellant's counsel quoted Ala. Code (1975), § 12-21-43, in support of his objection. That section provides:
 "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction or event if it was made in the regular course of any business and it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term, 'business' shall include a business, profession, occupation and calling of every kind."
The Court of Criminal Appeals held that although counsel for appellant was correct in principle to argue that Ms. Taylor had not testified that it was in the regular course of business for the Alabama Department of Corrections "to make such memorandum or record of whether David Randle was an inmate in the Alabama prison system on September 29, 1983," that requirement was inapplicable here. The court held:
 "[W]e think we can take judicial knowledge of the fact that 'it was the regular course of the business' of the Alabama Department of Corrections 'to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter.' Although the conjunctive requirement relied upon by appellant's counsel is applicable to many businesses, the particular requirement of the statute is tautological when applied to such businesses as that of the Alabama Department of Corrections." 554 So.2d 1128.
We disagree with the conclusion of the Court of Criminal Appeals that the requirement of § 12-21-43, at issue here, is "tautological" when applied to the Department of Corrections. Had the State relied solely upon Ms. Taylor's testimony to prove Randle's prior conviction, we would agree with appellant that reversible error had been committed. Here, however, the State also introduced a certified copy of the trial docket sheet from Jefferson County as proof of the appellant's conviction for receiving stolen property. At most, therefore, assuming the trial docket sheet was properly admitted, the admission of Ms. Taylor's testimony was harmless error.
Appellant next argues that the trial court erred in admitting the trial docket *Page 1135 
sheet from Jefferson County, and that the Court of Criminal Appeals erred by not reversing. We disagree.
In Thomas v. State, 395 So.2d 1105 (Ala.Crim.App. 1981), the Court of Criminal Appeals recognized the validity of Act No. 1037, Acts of Ala. 1971, p. 1847. The court held:
 "We find that Act No. 1037, Acts of Ala. 1971, p. 1847, approved September 7, 1971, provides that in Jefferson County the orders entered by the circuit judges on what were then commonly called trial sheets, 'shall have the same force and effect as Minutes of the Circuit Courts. . . .' Act No. 1037 is a general act of local application applying to all counties having a population of 500,000 or more. It was enacted prior to the decision in Peddycoart v. City of Birmingham, Ala., 354 So.2d 808 (1978), and therefore is a valid statute."
395 So.2d at 1108. In Julius v. State, 407 So.2d 141, 148
(Ala.Crim.App. 1980), reversed on other grounds, 407 So.2d 152
(Ala. 1981), the Court of Criminal Appeals held that certified copies of trial docket sheets from Jefferson County were properly accepted by the Circuit Court of Montgomery County in accordance with the provisions of Act No. 1037. We note that appellant quotes dicta in Lidge v. State, 419 So.2d 610
(Ala.Crim.App. 1982):
 A prior conviction may be proved through the use of a certified copy of a trial docket sheet only in Jefferson County. Thomas v. State, 395 So.2d 1105, 1108 (Ala.Crim.App. 1981).
419 So.2d at 615 n. 2 (emphasis original). In fact, Thomas v.State does not say that a trial docket sheet from Jefferson County may be used only in Jefferson County.
As a general act of local application enacted prior to our decision in Peddycoart, supra, Act No. 1037 has been declared valid in Thomas and Julius. Act No. 1037 provides in pertinent part:
 "Section 1. That in all counties having a population of 500,000 or more according to the last or any subsequent federal census, all orders and decrees shall be made and entered by Circuit Judges sitting in and for said counties on a sheet or sheets now commonly called trial sheets, that there shall be a trial sheet or sheets for each case docketed in such courts properly identified by the style of the case and a case number.
 "Section 2. That after all orders and decrees have been made and entered, in any case, by the Circuit Judge or Judges sitting in and for such counties, the Clerk of the Circuit Courts of such Counties shall file such sheets in numerical order in well bound books labelled 'Minute Books' and such judgments or decrees shall have the same force and effect as Minutes of the Circuit Courts of the said counties prior to the passage and approval of this act.
 "Section 3. That all laws or parts of laws in conflict with this act are repealed."
[as quoted in] Julius v. State, supra, at 148.
Appellant argues that Act No. 1037 is invalid because it conflicts with provisions of the Alabama Constitution and violates the Equal Protection Clause of the United States Constitution. Again, we disagree.
The Court of Criminal Appeals cited Thomas, supra, in reaffirming the validity of Act No. 1037. Appellant argues that the "persuasive force of Thomas has been substantially diminished" by our decisions in Crandall v. City of Birmingham,442 So.2d 77 (Ala. 1983), and Ex parte DeMent, 424 So.2d 659
(Ala. 1982). Contrary to appellant's assertion that Thomas has been "substantially diminished" by Crandall andDeMent, the acts challenged in those cases were held to be violative of equal protection. In DeMent, supra, we said that the act in question was enacted prior to our decision inPeddycoart; therefore, it was subject to review by application of pre-Peddycoart rules, and it failed to withstand equal protection scrutiny. Ex parte DeMent, supra, at 661. Applying the same pre-Peddycoart analysis to the present Act, we find no basis for appellant's allegation that he was denied equal protection of the law.
As the State has pointed out, the docket sheet used by Jefferson County pursuant to Act No. 1037 designates the trial court, *Page 1136 
and indicates whether the case was tried to the court or before a jury, whether the defendant was represented by counsel, the charge stated in the indictment, the names of the parties, the defendant's plea, the disposition of the case, whether defendant pleaded guilty knowingly if a guilty plea was entered, the specifics of the court's judgment, attestation by the proper custodian, how the sentence will be served, and disposition of post-judgment motions. We find no evidence that Act No. 1037 has in any manner imperiled the appellant's rights or privileges under the Alabama Constitution or the United States Constitution. The State has correctly pointed out that the use of a certified docket sheet in lieu of a certificate of judgment has not changed the substance of what must be presented to prove a conviction in court.
Act No. 1037 was intended to provide an alternative record keeping method in counties with populations exceeding 500,000 inhabitants, i.e., Jefferson County at present, in view of the greater number of criminal cases filed there. Appellant cites a five-year profile comparing the number of criminal filings in Jefferson and Mobile Counties for the years 1979-1983 in support of his argument that there is no reasonable relationship between a population-based classification and the intent of Act No. 1037. With the exception of 1982, when Jefferson County criminal filings exceeded Mobile County filings by only six percent, filings in Jefferson County for the years 1979 through 1983, ranged from 20% to 45% greater than the number of criminal filings in Mobile County, the next most populous county in the State. For the five-year period cited by the appellant, criminal filings in Jefferson County exceeded the filings in Mobile County by an average of 25.2% per year. When viewed in perspective, the statistics cited by the appellant appear to provide scant support for his argument.
Act No. 1037, as the Court of Criminal Appeals noted inThomas, supra, is a "general act of local application applying to all counties having a population of 500,000 or more." InOpinion of the Justices No. 288, 425 So.2d 407 (Ala. 1982), we held that with regard to legislation enacted prior to our decision in Peddycoart, we would look to whether the "classifications were found to be 'substantial,' were not 'arbitrarily' fixed, and were based upon a 'reasonable necessity' for the several classifications." Opinion of theJustices No. 288, supra, at 409. Act No. 1037, a general act of local application, was enacted prior to our decision inPeddycoart, and like Dixon v. State, 27 Ala. App. 64,167 So. 340, cert. den., 232 Ala. 150, 167 So. 349 (1936), applied only to Jefferson County at the time it was enacted. This Court held in Dixon, and we find here, that the classification used in this case was determined in good faith and is reasonable.
Appellant also challenges the validity of Act No. 1037 on the grounds that it conflicts with the principle of a unified judicial system mandated by Ala. Const. amend. 328, §§ 6.01 and 6.11, and violates Ala. Code (1975), § 12-17-94, regarding the duties of circuit clerks. Both grounds are based upon the view that Act No. 1037 is an impermissible local law, a view we reject. (See Peddycoart, supra.) We agree with the appellant that a trial docket sheet and a certificate of judgment are different documents; however, we have held previously — and we reaffirm here our judgment — that, in the interest of efficiency and economy, Act No. 1037 reasonably accomplishes the purpose of allowing counties of 500,000 or more inhabitants to conform the trial docket sheet to serve two functions: as a docket sheet and as a certification of judgment. We find no evidence that the appellant was denied due process or equal protection of the law or that he was in any way deprived of any right or privilege of citizenship as a result of the use of a certified trial docket sheet to prove his prior conviction. The judgment is, therefore, affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and STEAGALL, JJ., concur.
ALMON and BEATTY, JJ., dissent. *Page 1137