(124 So. 523)

## STANDARD OIL CO. OF KENTUCKY v. LIMESTONE COUNTY. (8 Div. 134.)

Supreme Court of Alabama. June 27, 1929.

Rehearing Denied Nov. 29, 1929.

John S. Coleman, S. M. Bronaugh, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Fred Wall and J. G. Rankin, both of Athens, for appellee.

D. P. Wimberly, of Scottsboro, amicus curiæ.

234

BOULDIN, J. (after stating the case as above). The purpose of the appeal is to test the constitutionality of the legislative act and the order of the commissioners' court.

■ 1. The act is first assailed as in violation of subdivision 15, § 104, of the Constitution, saying: "The Legislature shall not pass a special, private, or local law. * * * "Regulating either the *assessment* or *collection* of taxes," etc. (Italics supplied.)

Clearly the act is a local law looking to the *levy* and *collection* of a local tax.

With equal clearness the title to the act and the order made in pursuance thereof deals with a *privilege tax* and not a *property tax*. The tax is levied in aid of the construction of public roads, bridges, and ferries, a public highway measure.

So, the real inquiry is: Does subdivision 15, § 104, forbid a local law for the *levy* of privilege taxes for public road purposes, or, if not, does it forbid the incorporation therein of provisions for the *collection* of such taxes?

Can such law be made complete in itself, or must regulations for *collection* be by general law?

Admittedly no applicable general law exists.

This constitutional provision was construed by this court the year following its adoption in Sisk v. Cargile, 138 Ala. 164, 35 So. 114. That case involved a local act for Jackson county levying an ad valorem tax under section 215 of the Constitution to pay the interest and principal of road bonds to be issued by the county. Said the court: " * * * The *gravamen* of the present act is the levy of a tax for a defined purpose. The assessment and collection of taxes is a wholly distinct power and duty, vested in a distinct body of magistracy, from that of levying a tax. The constitution is aimed at local legislation tending to confuse the authorities in the administration of the elaborate system of laws regulating the assessment and collection of taxes. It is not aimed at the exercise of the sovereign legislative power to levy taxes for lawful purposes by local or special laws. * * * I repeat, the *gravamen* of the act is the *levy* of a special tax, a purely legislative power, while the duties of the various officers in relation to the assessment and collection of taxes are ministerial and sometimes *quasi-judicial*. State v. Brewer, 64 Ala. 287; Perry County v. S. M. & M. R. Co., 58 Ala. 546; Id., 65 Ala. 391; Fox v. McDonald, 101 Ala. 51, 69 [13 So. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98]."

Such statement of the law was not at all new in this state. Speaking by Mr. Justice Stone in Perry County v. Selma, Marion & Memphis Railroad Co., 58 Ala. 547, 559, it was said: "Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subjects and rate of taxation. Burroughs on Taxation, 194; Cooley on Taxation, 244–5. Assessment is quasi-judicial, and consists in making out a list of the taxpayer's taxable property, and fixing its valuation or appraisement. Hilliard on Taxation, 290."

This definition of "assessment" as relating to property taxes rather than privilege taxes obtained at the time our present Constitution was framed.

The aim of subdivision 15, § 104, as directed to uniformity in the system of laws relating to assessment and collection of taxes, was reaffirmed in State v. Bowles, 217 Ala. 458, 462, 116 So. 662.

As to further reasons underlying such provisions, we approve the language of Mr. Justice Kennamer in Sapulpa v. Land, 101 Okl. 22, 25, 223 P. 640, 643, 35 A. L. R. 872, 876, saying: " * * * It would be mainfestly unjust for the supreme sovereign power to assess the taxpayer's property at one value, the county at another, the school district at another, and the city at another, all of which would lead to confusion and injustice. * * * Section 20 provides the mode by which the legislature is authorized to provide for the collection of county, city, town, or other municipal taxes, which is by general laws."

On its face this announcement shows the court had in mind property taxes rather than local privilege taxes. The policy stated finds expression in our Constitution making the assessment for state purposes the same upon which county taxes as well as municipal are levied. See Perry County v. S. M. & M. R. R., supra.

The case of Sisk v. Cargile, supra, defining the purpose of subdivision 15, § 104, and the distinction between the levy and the assessment of taxes, has been frequently cited as authority by other courts and text-writers. 1 Cooley, Taxation, § 532 and notes; Gray, Limitations of Taxing Power, §§ 1743, 1744; Borrowdale v. Socorro County, 23 N. M. 1, 163 P. 721, L. R. A. 1917E, 456.

Privilege taxes are not assessed as that term was defined by our own court. They usually take the form of license taxes, the amount thereof fixed by the levying statute or ordinance. The taxpayer applies for the license and tenders the amount due. When based upon volume of business done, some evidence of the amount due must be provided for; but we cannot assume that a general constitutional provision of this sort has in view a specific class of privilege taxes of that sort.

Again, local laws relating to public roads are not forbidden by section 104 of the Constitution. At the time of its adoption the entire burden of construction and maintenance of roads and bridges was upon the counties. The Constitution left it so. Not until Amendment No. 1 to section 93, commonly known as the Bankhead Amendment, was the state permitted to engage in road building.

In this situation provision was made in section 215 for the levy of special ad valorem taxes by the counties in aid of road and bridge construction; and in section 221 the state was forbidden to usurp the field of privilege taxation to the exclusion of counties and municipalities.

We need merely mention what has been so often said, that the sovereign power of the Legislature in the matter of privilege taxes is unabridged save in the matter of reasonable classification, uniformity in application to the class, and freedom from invasion of constitutional guarantees against confiscation or oppression.

Local road laws. carrying provisions for levying and collecting privilege taxes under orders of the governing bodies of counties were well known prior to the Constitution of 1901. Like laws enacted since that time, committing to the county authorities the power to make such levies and to make regulations looking to their collection, have been continuously enacted and sustained by this court since Kennamer v. State, 150 Ala. 74, 43 So. 482.

With the unquestioned power to enact local road laws, and to incorporate therein provisions for the levy of local privilege taxes, the question really resolves itself to this: Must uniform provisions for the collection of all such taxes be made by general law?

Appellant complains that inconvenience results to companies doing business all over the state if they must comply with local regulations in the several counties. In the nature of the case local privilege taxes are payable by those who do a local business. Those subject to the laws are those concerned with the regulations for collection. Can we assume that the Constitution makers had in mind the few who might be concerned with state-wide regulations?

We do not think the term "taxes" in subdivision 15, § 104, meant one kind of taxes as regards "assessment" laws, and another and more inclusive kind as regards "collection" laws.

The entire history of such legislation, and of our constitutional provisions relating thereto, makes it clear to us that the Legislature has full power to enact local laws relating to public roads, to provide local levies of privilege taxes for such purpose, either as separate enactments or as part of more inclusive statutes, and to make such laws complete and effective by providing for regulations looking to their collection. Subdivision 15, § 104, has no reference to the class of local laws here involved.

2. It is next insisted the act in question is violative of section 105 of the Constitution, saying: "No special, private, or local law, * * * shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this State."

In support of this contention reference is made to the general law in force imposing a gallonage tax of 2 cents on motor fuels (General Acts 1923, p. 36), and by later act divided equally between the 67 counties of the state for the construction and maintenance of public roads and bridges therein (General Acts 1923, p. 197, § 83).

Section 105, above, has been often considered by this court. Suffice to say it is fully settled that this section does not forbid local legislation on subjects not prohibited by section 104, merely because a general law deals with the same matter. If, in the judgment of the Legislature, local needs demand additional or supplemental laws substantially different from the general law, the Legislature has power to so enact. Courts are charged with the duty to determine whether there is a substantial difference between the general and the local law, but cannot invade the legislative domain to determine whether a county should have a local law substantially different and in addition to the state law. State v. Bowles, 217 Ala. 458, 116 So. 662,

and authorities collected on page 461 (116 So. 664).

Certainly the 3-cent gallonage tax in the Limestone County Act is not the same tax levied by the general law. It is an additional tax.

The machinery or regulations for collection are widely different. The state tax is collected by the state tax commission, then distributed to the several counties, each taking a like portion regardless of the amount it has paid into the fund. Thus, the use made of the state fund is quite different from that of the local fund. The larger part of the tax paid in Jefferson and other large counties is distributed out over the entire state. It would seem a severe application of section 105 if the Legislature were compelled to increase this 2-cent gallonage tax over the whole state in order to provide needed funds in the smaller counties, instead of enacting, as it has, that increased funds be raised by a local tax, which in the nature of things is passed on to local consumers, who, in turn, get first benefits from the roads they thus provide.

We regard the single fact that both funds are devoted to public roads of the county through the county governing body as not at all controlling. County roads are part of the system of state roads; and state roads are county roads. Since the motorcar has come, the state as well as federal government has joined in the road program. County, state and nation collaborate; each directing first attention to its special constituency.

Our several constitutional provisions, and later amendment, give expression to such purpose in promoting this important government enterprise.

■ Further reference in brief is made to Code, § 1366, a general law authorizing counties to levy privilege taxes on vehicles. That this statute covers the field of privilege taxes so as to cut off local legislation of the class under review is untenable. We may note this same general law on public roads declares it shall not affect local laws, present or future, Code, § 1348.

The Limestone county act does not violate section 105 of the Constitution. In view of some comments in brief, we note the obvious fact that neither this section nor subdivision 15, § 104, deals with any question of excessive, discriminative, or oppressive levies of privilege taxes on motor fuels. Such question is not raised and is not considered.

■ 3. It is further argued that the Limestone act is violative of section 45 of the Constitution, in that in the first Section it provides for a property tax on motor fuels, or, in the alternative, a privilege tax.

The language is not as clear as it could be, but considering the subject-matter of both alternatives, we think only one privilege tax is contemplated; that there is an alternative definition rather than an alternative tax in kind.

■ Manifestly a property tax of the kind would be void, because violative of the uniformity provisions of our Constitution. Where two reasonable constructions may be given, that should be applied which will uphold and not defeat the legislative will.

■ Moreover, the title to the act is single, and clearly denotes a privilege tax. In such case, if void matter is inserted outside the scope of the title, it will be stricken, and the act upheld. Gibson v. State, 214 Ala. 38, 106 So. 231. The tax levied by the county in this case is clearly a privilege tax.

4. Finally, the act is challenged as violative of section 44 of the Constitution. This objection is directed against the provision of the act purporting to grant power to "provide penalties for the violation of such rules and regulations," and against that portion of the resolution of the county commissioners declaring such violation a misdemeanor punishable under the general laws of the state.

The implied limitation on the delegation of legislative power by vesting the same in the Legislature under section 44 has been the subject of innumerable decisions.

■ As applied to executive officers and statutory regulative bodies, the rule is well recognized that while the law may declare a violation of such regulations a misdemeanor, the regulative agency cannot be vested with power to create a criminal offense. The regulations are said to have the force of law, but the power to make their violation a crime remains with the Legislature. 6 R. C. L. 181.

Whether this rule applies to counties as a local government unit, agency, or auxiliary, recognized by the Constitution, is a question not free from great difficulty. It is part of the legislative power itself to define and confer on municipalities powers of local self-government within constitutional restrictions.

■ Likewise a county derives its powers in the main from the Legislature. In the absence of limitations on the legislative power to set the bounds of county government with regard to the functions usually committed to such governmental subdivisions, what limitations must be implied? We find no case, and none has been cited, either denying or affirming the legislative power to confer on county governing bodies the authority to make the violation of a valid regulation a misdemeanor.

■ The power of the Legislature to make a violation of such regulation a misdemeanor has been fully settled by our decisions. Ferguson v. Starkey, 192 Ala. 471, 68 So. 348; Hill v. Moody, 207 Ala. 325, 93 So. 422.

We note the latter case cited does not deny the power of the Legislature to confer au-

thority on the governing body of the county to declare a violation of its rules a misdemeanor, but declares the Legislature had not so done. The act there considered declared the violation of such rules or regulations a misdemeanor.

Sound legislative policy at least suggests the wisdom of confining to the Legislature itself the matter of creating criminal offenses.

The exigencies of this case do not require a decision whether conferring such authority on a county board is unconstitutional.

If permissible, it will not be so held unless the authority is conferred in clear and explicit terms.

As heretofore shown, the matter of providing roads and bridges is a primary function of county government in this state. Raising revenue through general or local laws is a necessary incident to that task. Such is the act before us. The power to levy the tax and to provide regulations for its collection necessarily implies such effective regulations as are common and usual in privilege tax laws. It is now, and has long been, the custom to attach certain civil penalties for delinquency. The provisions of this act have a field of operation in this regard. To that extent we hold the Legislature was acting within its power in conferring on the commissioners' court authority to impose penalties.

Any invalidity of the order of the court in going beyond its power in creating a criminal offense would go to that part of the order, not to the act, nor to the validity of the tax levied thereunder.

Under the well-known rules applied in considering the constitutionality of legislative acts, we are not clearly convinced this act is void, nor that the tax levied thereunder is illegal.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.