This is an appeal by Hoyt Bedingfield, Jr., as acting director of finance of the City of Birmingham, and the City of Birmingham from a judgment upholding a Jefferson County ordinance, specifically Ordinance No. 1120, establishing an occupational tax. We affirm.
The action was filed on October 19, 1987, and was consolidated for trial with the case of Carolyn Phillips, etal. v. Jefferson County Commission.
Ordinance No. 1120 levies a license or privilege tax on natural persons engaged in any vocation, occupation, calling, or profession who are not required by law to pay any license or privilege tax to the state or county. This tax was promulgated by Jefferson County under the authority of Act *Page 1271 
No. 406, approved September 7, 1967, Acts of Alabama 1967, at 21-23. Pertinent sections thereof are quoted below:
"AN ACT
 "To authorize the governing body of any county of the State having a population of 500,000 or more, according to the last or any subsequent Federal census, to levy a business or privilege tax upon any business, vocation, occupation, calling or profession for which a license or privilege tax is not required for either the State of Alabama or the county by the laws of the State of Alabama, and to limit the amount of any such business or privilege tax.
"Be It Enacted by the Legislature of Alabama:
 "Section 1. This Act shall apply to any county of the State of Alabama having a population of 500,000 or more, according to the last or any subsequent federal census, and to no other county.
". . . .
 "Section 3. The purpose of this Act is to equalize the burden of taxation by authorizing the county to impose a license or privilege tax upon persons now engaging in certain businesses without paying any license tax thereon to either the state or county.
 "Section 4. The governing body of the county is hereby authorized to levy a license or privilege tax upon any person for engaging in any business for which he is not required by law to pay any license or privilege tax to either the State of Alabama or the county by any of the following: Article 1, Chapter 20, Title 51; Sections 176, 177, 178, 180, 182, 183, 184, 186, 429, and 826 in Title 51 of the Code of Alabama of 1940 as amended.
 "When a person is engaged in more than one business for one or more of which a license or privilege tax is required to be paid to the State or the county but for one or more of which no license or privilege tax is required to be paid to the State or county, the county governing body shall have the authority to levy a license or privilege tax upon that business, or those businesses, for engaging in which such person is not required to pay any license or privilege tax to the State or county.
 "Section 5. The tax hereby levied shall be paid to that officer or employee of the county chargeable with the duty of collecting license or privilege taxes payable to the county.
 "Section 6. No license or privilege tax levied by the governing body of the county on any person, for engaging in any business shall be at a rate which is in excess of the rate of license or privilege tax levied by the largest municipality of the county on the same or similar type of business activity."
Allegations of unconstitutionality made below were denied by the defendants. Following discovery, testimony taken in open court, and stipulation, the Jefferson Circuit Court upheld the ordinance, and this appeal followed. Because a number of issues are presented here, we shall treat them seriatim.
 I.
Did Act No. 406 manifest a legislative intent to authorize Jefferson County to levy an occupational tax?
Plaintiffs' argument here is multifaceted. First, they contend that the stated purpose of the Act is to authorize a tax only upon "certain businesses," and not "occupations." Further, plaintiffs argue that § 6 of Act No. 406 does not permit a privilege tax "which is in excess of the rate of license or privilege tax levied by the largest municipality of the County on the same or similar type of business activity," meaning that Jefferson County could not implement the Act by levying a tax in excess of that which had been levied by Birmingham. Because Birmingham had no such privilege tax in 1967, plaintiffs argue, any county tax under Act No. 406 would offend the Act. Finally, according to plaintiffs, the county's own implementation of the Act when it was enacted in 1967, as only a licensing code authorizing licensing of certain businesses, gives weight to the limiting nature of Act No. 406. *Page 1272 
We must respectfully reject these arguments. While we are mindful that taxing statutes are to be strictly construed,State v. Seals Piano Co., 209 Ala. 93, 95 So. 451 (1923), it does not offend that principle to uphold this statute. Indeed, the express language of the Act authorizes the county "to levy a business or privilege tax upon any business, vocation, occupation, calling or profession." When the intention of the legislature is so apparent from the face of a statute that there can be no question as to its meaning, there is no room for construction. American Institute of Psychotherapy v.Alabama Board of Examiners in Psychology, 410 So.2d 54 (Ala. 1982). Thus, § 4 is to be read as authorizing a privilege tax "upon any person for engaging in any business [or occupation]."
Municipal licensing authority has existed at least since the Code of 1907, see Code of 1975, § 11-51-90. Birmingham originally adopted its licensing code as early as 1916, and in 1967 it had an extensive catalog of business categories subject thereto. However, it was not until 1970 that Birmingham itself adopted Ordinance No. 70-76, providing for a license fee for occupations and professions. Given the fact that Birmingham had possessed the authority under state law to impose an occupational privilege tax since 1907, it is clear that by § 6 of Act No. 406 the legislature, cognizant of that power, decided to restrict the county's authority to a maximum as established by Birmingham's occupational privilege tax. It is a fundamental principle that the legislature, in enacting a statute, is presumed to have full knowledge and information on prior and existing law on the subject of the statute. Ex parteLove, 513 So.2d 24 (Ala. 1987). Thus, we cannot agree with plaintiffs that Act No. 406 required Jefferson County to implement its authority contemporaneously thereunder, or lose it altogether. The Act itself contains no such limiting language. True, Jefferson County did not implement the "occupational" aspect of the statute until 1987. Nevertheless, the authority to do so continued.[1]
Finally, we are not persuaded by plaintiffs' argument that, in construing Act No. 406, this Court should defer to the county's alleged contemporaneous interpretation of the Act. Because we do not find the Act doubtful in its meaning, we need not resort to an alleged contemporaneous interpretation by the county.
 II.
Is Act No. 406 unconstitutional as violating limitations on local legislation as explained in Peddycoart v. City ofBirmingham, 354 So.2d 808 (Ala. 1978)?
According to plaintiffs, Act No. 406 violates the mandate ofPeddycoart in two respects: (1) the general laws of Alabama have preempted the field of license and privilege taxation to prevent reliance upon local legislation, and thus Act No. 406 violates Section 105 of the Constitution; and (2) the population classification of Act No. 406 (500,000 or more), which makes it a "bracket bill," lacks a reasonable relationship with the statute's purpose.
Commenting upon Peddycoart in Freeman v. Purvis,400 So.2d 389 (Ala. 1981), this Court stated:
 "We must point out, however, that following the Peddycoart decision which was released on January 13, 1978, two amendments to the Alabama Constitution of 1901 were ratified by the people: Amendment No. 375, ratified on November 20, 1978, and Amendment No. 389, ratified on November 4, 1980. Because the latter Amendment is pertinent, we quote it here:
 " 'Any statute that was otherwise valid and constitutional that was enacted before January 13, 1978, by the legislature of this state and was a general act of local application on a population basis, that applied only to a certain county or counties or a municipality or municipalities of this state, shall not be declared invalid or unconstitutional by any court of this state because *Page 1273 
it was not properly advertised in compliance with section 106 of this Constitution.
 " 'All such population based acts shall forever apply only to the county or counties or municipality or municipalities to which they applied on January 13, 1978, and no other, despite changes in population.'
". . . .
 "The effect of this Amendment was to validate all 'bracket bills' enacted without advertising before January 13, 1978, the date of the Peddycoart decision, and which were not otherwise unconstitutional. . . ."
Act No. 406 was approved in 1967, well before the date of thePeddycoart decision of January 13, 1978, and, as a general law of local application, was validated by Amendment 389 even though it was not advertised under Section 106 of the Constitution of 1901.
Even under pre-Peddycoart standards, Act No. 406 must survive a constitutional attack based on a supposed lack of relationship between its purpose and the expressed population classification. As observed in Dearborn v. Johnson, 234 Ala. 84,173 So. 864 (1937), on that subject, much is left to legislative discretion in fixing that classification and in recognizing that purpose. In Couch v. Rodgers, 253 Ala. 533,45 So.2d 699 (1950), this Court reviewed a number of its decisions that had upheld "bracket bills" of substantial minimum, but no maximum, population classifications:
 "We have numerous decisions which give illustration to the principle. We will not undertake to analyze them all, but only such as seem to shed light upon the instant suit. In the case of Wages v. State, 225 Ala. 2, 141 So. 707, 708 [1932], this Court was dealing with an act similar to the one here involved. By its terms it had application to counties having a population of three hundred thousand or more according to the last or any subsequent federal census. The Court there undertook to apply the principle which we have stated above. The act was held to be general, although it then applied only to Jefferson County. We quote from that opinion as follows: 'The wisdom of the law and the necessity for its enactment and the classification adopted were addressed to the lawmaking body. It may be well said, this body understood and appreciated the necessity of furnishing protection to the people in the matter legislated upon in the act, in the larger and more populous counties of the state, which was not necessary or practicable in the smaller counties.'
 "We have numerous cases which bring out that application of the principle wherein it was observed that counties of large population may reasonably be supposed to be differently served in many respects than counties of smaller population and there is sometimes drawn a distinction between a classification based upon a minimum population and a classification based upon a population with both a minimum and a maximum limit. The case of State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429 [1933], brings out that distinction. That case was dealing with an act regulating the business of plumbing in counties having a population of 100,000 or more according to the last or any subsequent federal census. The Court emphasized the different principles applicable when there is only a minimum but not a maximum number. When there is only a minimum, the Court thought a more liberal application of the principle should be made.
". . . .
 "In the Opinion of the Justices, 249 Ala. 511, 31 So.2d 721, we were responding to a legislative inquiry as to a proposed act applicable to counties of 400,000 population or more according to the last or any subsequent federal census, which would require the payment to such counties of a license tax of one cent on each gallon of gasoline. We thought there was a reasonable relation of the subject matter of the Act to counties of such population because we thought that in large counties the load of traffic on the highways by reason of such population justified the legislature in providing additional income in order to take care of its effect." *Page 1274 
It is clear from the terms of Act No. 406 that its purpose was to provide more populous counties with a source of revenue by authorizing them to impose a privilege or license tax. The record establishes, if common sense does not, that needs and demands for services made upon county governments keep pace with urbanization and increases in population, necessitating new opportunities for revenue. It follows that populous counties experience greater demands for costly services than those sparsely populated. In this case, therefore, the requisite relationship was established. Peddycoart, supra.
Is Act No. 406 unconstitutional under § 105, Constitution of 1901?
Plaintiffs maintain that Act No. 406 is unconstitutional under Section 105, Constitution of 1901. The pertinent part of that section states that "[n]o special, private, or local law . . . shall be enacted in any case which is provided for by a general law." Plaintiffs reason that Act No. 406 is infirm under that provision because of the prior enactment of Article I, Chapter 20, Title 51, Code of 1940, now Article II, Chapter 12, Title 40, Code of 1975, which provides:
 "Every person, firm, company, corporation or association, receiver or trustee, but not a governmental subdivision, engaged in any business, vocation, occupation, calling or profession herein enumerated or who shall exercise any privilege hereinafter described for which a license or privilege tax is required shall first procure a state license, and a county license when so required, and shall pay for the same or shall pay for the exercise of such privilege the amounts hereinafter provided, and comply with all other provisions of this title."
Section 40-12-40, Code of 1975.
Act No. 406, as we have stated, is a general law, not a local law; thus Section 105 is inapplicable.
 III.
Finally, plaintiffs contend that Act No. 406 fails for want of an express provision therein for the collection of an occupational tax. Plaintiffs argue further that a reading of Act No. 406 to so provide would violate Section 104(15) of the Constitution of 1901, which prohibits the enactment of a local law "[r]egulating either the assessment or collection of taxes."
For the reasons previously discussed, Act No. 406 is a general, not a local, law; hence, this provision, Section 104(15), is inapplicable. And, as the trial court found:
 "The Courts have long held that there is a distinction between the terms 'assessment' and 'levy' and held that 'assessment,' as used in Subdivision (15), relates to property taxes rather than privilege taxes. Opinion of the Justices, 266 Ala. 363, 369, 96 So.2d 634 (1957) (quoting Standard Oil Co. v. Limestone County, 220 Ala. 231, 234-235, 124 So. 523 (1929)."
Moreover, the grant of authority to "levy a license or privilege tax upon any person" in § 4 of Act No. 406 was in itself authority to collect such a tax. Cf., Syracuse Trust Co.v. Board of Supervisors, 13 N.Y.S.2d 390 (Sup.Ct.), affirmed,258 A.D. 17, 15 N.Y.S.2d 920 (1939); to "levy" is to "collect" a tax. Black's Law Dictionary (5th ed. 1979) at 816.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.
[1] By stipulation, it was established that, while Birmingham itself adopted its license code as early as 1916, and possessed an extensive license code in 1967, it did not establish its occupational tax until 1970.