662 So.2d 1127 (1995)
JEFFERSON COUNTY and the Birmingham-Jefferson Civic Center Authority
v.
Jason RICHARDS, et al.
1930255.
Supreme Court of Alabama.
March 31, 1995.
Rehearing Denied June 9, 1995.
Thomas L. Stewart and Mary H. Thompson of Gorham & Waldrep, P.C. and William M. Slaughter and Robert D. Shattuck, Jr. of Haskell, Slaughter, Young & Johnston, P.A., Birmingham, for Birmingham-Jefferson Civic Center Authority.
Edwin A. Strickland, Charles S. Wagner and Jeffrey M. Sewell, County Attys. Office, Birmingham, for Jefferson County.
William J. Baxley and Joel E. Dillard of Baxley, Dillard & Dauphin, Birmingham, for Jason Richards, et al.
ALMON, Justice.
This appeal by permission is from the denial of a summary judgment in a declaratory judgment action brought on behalf of two classes of taxpayers against Jefferson County. The taxpayers sought to have Act 406, 1967 Ala. Acts, and Jefferson County Ordinance 1120, adopted in 1987, declared unconstitutional. *1128 Act 406 authorizes the Jefferson County Commission to levy a county occupational tax on all persons who earn wages in the County and who are not required to pay the state business license tax. Ordinance 1120 levies the county occupational tax at the rate of .005 (½ of 1%) on all eligible income earned in the county, exempting persons who pay the state business license tax and domestic servants employed in private homes. The complaint was filed by two classes of taxpayers: the "Foley-Dykes" class, which represents all Federal employees subject to the tax, and the "Richards-Hill" class, which represents all non-Federal employees subject to the tax. The complaint alleges that Act 406 and Ordinance 1120 violate the equal protection and due process provisions of the Federal and State constitutions, and, with regard to the class of Federal employees only, the Buck Act, 4 U.S.C. § 111 et seq. The plaintiffs allege that the Act and the ordinance are made unconstitutional by what they call the arbitrary and irrational character of the exemptions. The Birmingham-Jefferson Civic Center Authority ("BJCC") was allowed to intervene, asserting as its interest $10 million per year of occupational tax proceeds that have been pledged to the BJCC for a 20-year period to repay BJCC special tax bonds that are now outstanding in the principal amount of over $123 million.
The County moved for a summary judgment, contending that all of the claims, except for the Federal employees' Buck Act claim, are barred by the doctrine of res judicata, based on the action that was the subject of this Court's opinion in Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988). The trial court entered a summary judgment for the County on all State constitutional claims, but denied the motion for summary judgment with regard to the Federal constitutional and statutory claims, stating:
"In Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988), neither the trial court nor the Alabama Supreme Court determined whether Alabama Act No. 406 (Alabama Legislature 1967), authorizing the tax in question, or Jefferson County Ordinance No. 1120 (Jefferson County Commission 1987), imposing the tax in question, violates the equal protection clause of the United States Constitution by creating an unreasonable, unjust and improper classification of citizens subject to the tax, while exempting certain citizens from said tax in an arbitrary, irrational and unjust manner."
Pursuant to Rule 5, Ala.R.App.P., we granted the County permission to appeal the denial of the summary judgment. The issue before us is whether the trial court correctly held that the Federal constitutional claims are not barred by the doctrine of res judicata and thus correctly denied the summary judgment on these claims.
The doctrine of res judicata is a well-established principle of law:
"The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. Hughes v. Allenstein, 514 So.2d 858, 860 (Ala.1987)."
Dairyland Insurance Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990).
"If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation."
Id.; Crutcher v. Wynn, 591 So.2d 453, 454 (Ala.1991); Ex parte McCracken, 576 So.2d 664, 665 (Ala.1991); Wood v. Tricon Metals & Services, Inc., 548 So.2d 138, 140 (Ala. 1989); Trimble v. Bramco Products, Inc., 351 So.2d 1357 (Ala.1977).
"In general a judgment is res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit."
Heiser v. Woodruff, 327 U.S. 726, 735, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946) (citations omitted).
The appeal in Bedingfield arose from two complaints that were consolidated in a single action. One complaint was filed by Hoyt Bedingfield, Jr., individually as a taxpayer, and also in his capacity as acting director of finance of the City of Birmingham, and by *1129 the City of Birmingham. The Bedingfield/Birmingham complaint requested a judgment declaring
"that Ordinance No. 1120 adopted by the Jefferson County Commission is void or invalid, and if necessary, that Act No. 406 passed by the Alabama Legislature in 1967 and approved by the Governor on September 7, 1967, is void and invalid to the extent that it supports any comprehensive occupational tax on all persons working in Jefferson County."
Among the grounds alleged in that complaint were that "Act 406 is a violation of the equal protection requirements and provisions of the federal and state constitution," and that "Act 406 is vague and ambiguous and therefore is a violation of the due process requirements of the state and federal constitution."
The second complaint sought declaratory and injunctive relief "against the action of the Jefferson County Commission levying an occupational tax on employees of Jefferson County." It was filed by three persons "in their individual capacity" as "employees within Jefferson County." In addition to several other allegations of violations of due process and equal protection principles, the complaint alleged that the tax
"constitutes a denial of equal protection in violation of the Fourteenth Amendment of the United States Constitution. Said Act exempts professional occupations required by State law to be licensed but does not exempt other professional and nonprofessional occupations."
(Emphasis added.) This allegation is the substance of the allegations made in the complaint now before the Court.
The complaint that is the subject of this appeal asks the circuit court to "declare the occupational tax unconstitutional, as depriving plaintiffs of due process of law and equal protection of the laws" guaranteed under the United States and Alabama Constitutions. The same cause of action was presented in both actions. Both were actions for declaratory judgments challenging the constitutionality of the Jefferson County occupational tax. Both complaints alleged violations of the equal protection and due process provisions of the State and Federal constitutions. The appellate briefs in Bedingfield argued an equal protection issue regarding the fact that Act No. 406 applied only to counties with a population of 500,000 or more. Bedingfield was decided, both by the circuit court and by this Court, on other State constitutional grounds, but the Federal and State equal protection and due process claims were pleaded, and it is at least true that they "could have been adjudicated." Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990). Furthermore, they arguably were adjudicated, because they were grounds stated as a basis for relief, and a final judgment denying relief was affirmed.
"Res judicata applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact." NAACP v. Hunt, 891 F.2d 1555, 1561 (11th Cir.1990) (citations omitted).
"`[A] party ... is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds on which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible.' Baltimore Steamship Company v. Vernon Phillips, 274 U.S. 316 [47 S.Ct. 600, 71 L.Ed. 1069] (1927)."
Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n, 401 So.2d 764, 768 (Ala.1981) (per Jones, J., with three Justices concurring and two Justices concurring in the result).
The only other element of res judicata that is at issue is "substantial identity of the parties," see Dairyland, supra.
"The second set of persons to whom res judicata applies is composed of those persons who are or were in privity with the parties to the original suit.... Privity is defined as `a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty.' ... Privity exists where the nonparty's interests were represented adequately by the party in the original suit.... Privity also exists where a party *1130 to the original suit is `so closely aligned to a nonparty's interest as to be his virtual representative.' United Merchants & Mfrs., Inc. v. Sanders, 508 So.2d 689, 692 (Ala.1987)."
NAACP v. Hunt, supra, at 1560-61 (citations omitted). See also Century 21, supra. The taxpayers in the Bedingfield action adequately represented the interests of the taxpayers here, and the respective taxpayers' interests are not only closely alignedthey are essentially identical. The "substantial identity of the parties" element of res judicata is met here.
The wisdom of disallowing successive attacks on the county tax on grounds that could have been pursued and adjudicated in the initial challenge is demonstrated by the BJCC's motion to intervene, which recites that it issued two series of bonds in 1989 to expand and improve the civic center. The motion continues:
"[P]ursuant to that certain Pledge and Appropriation Agreement between the Defendant Jefferson County and the Intervenor, said Defendant appropriated, pledged and agreed to pay a portion of the proceeds of the Occupational Tax [at] issue in this matter to the BJCC for repayment of the Series 1989 and Series 1989B Capital Outlay Special Tax Bonds issued by the BJCC in twenty (20) annual payments of $10,000,000.00 beginning in the year 1989 and ending in the year 2008."
In 1989, the county and the Authority, in pledging the occupational tax revenue and issuing the bonds, could have relied on Bedingfield as authoritatively establishing that the county occupational tax was not unconstitutional for the reasons asserted by the Bedingfield plaintiffs. To allow a challenge now that was pleaded and could have been adjudicated in Bedingfield would not only violate the res judicata principles discussed above, but would also improperly interfere with the operations of the county and the BJCC and undermine the security of the bonds, to the detriment of the bondholders.
For the foregoing reasons, we conclude that the circuit court incorrectly held that Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988), did not, by the operation of the doctrine of res judicata, bar this action.
REVERSED AND REMANDED.
SHORES, KENNEDY, COOK, and BUTTS,[*] JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The elements of the doctrine of res judicata have been precisely set out by this Court in Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala.1978), where this Court said:
"The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits."
See also Dominey v. Mathison, 292 Ala. 293, 293 So.2d 472 (1974), and my dissenting opinion in Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n, 401 So.2d 764, 770 (Ala.1981). Even a cursory examination of this doctrine as applied to the facts of this case reveals that it has no application to this case. In this dissent, I will make a brief statement of the facts and will state the principle of law I think should be applied to sustain the trial court's order.
The majority holds that these plaintiffs are bound by the judgment rendered in Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988), where the City of Birmingham challenged the constitutionality of Act No. 406 and the validity of a county ordinance establishing an occupational tax.
The trial judge, in denying the defendant's motion for a summary judgment in this case (that motion being based on the ground that the action was barred by the doctrine of res judicata), issued an order in which he concluded, in part, that "[i]n Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988), neither the trial court nor [this Court] determined *1131 whether Act No. 406 (Alabama Legislature 1967), authorizing the tax in question, or Jefferson County Ordinance No. 1120 (Jefferson County Commission 1987), imposing the tax in question, violates the equal protection clause of the United States Constitution by creating an unreasonable, unjust and improper classification of citizens subject to the tax, while exempting certain citizens from said tax in an arbitrary, irrational and unjust manner." The trial judge also determined that "[i]n Bedingfield v. Jefferson County, 527 So.2d 1270 (Ala.1988), neither the trial court nor [this Court] determined whether the tax in question violates the Buck Act (4 U.S.C. § 111) as it pertains to federal employees." I agree with the trial court on both points.
In concluding that the trial judge was correct, I have examined the pleadings in Bedingfield and the order entered by the trial judge in that case and I have studied the opinion issued by this Court in Bedingfield, a case in which I participated. I have also carefully considered the argument of Jefferson County that "the claims in this case arise from the same nucleus of operative fact as the claims made in Bedingfield and [that] because the evidence necessary to support both claims is identical, it is axiomatic that the fourth element of res judicata is satisfied," and I have given careful consideration to the views of my colleagues expressed in the majority opinion, and my only comment is that if the "same cause of action presented in both suits" element of the res judicata doctrine is so easily satisfied, then it could be extended ad infinitum and would establish a precedent that could close the courthouse doors to other plaintiffs in other cases who might find themselves faced with the rule of law herein established. I think that the Court is establishing a bad precedent.
My opinion that Bedingfield does not bar the claims presented in this case is the same as that of the trial judge: that this Court, in Bedingfield, did not adjudicate these claims, or any claim similar to them. The West Publishing Company synopsis in Bedingfield succinctly states what that case was about, and the issues it adjudicated:
"City challenged constitutionality of county ordinance establishing occupational tax. The Circuit Court, Jefferson County, Braxton L. Kittrell, Jr., J., upheld ordinance, and appeal was taken. The Supreme Court, Beatty, J., held that: (1) statute authorized county to levy occupational tax; (2) statute was general, rather than local legislation; and (3) statute authorizing levy of tax provided for collection of such tax."
527 So.2d at 1270. Where in the Bedingfield opinion is there an adjudication of the federal constitutional claims the plaintiffs raise in the instant action? Neither the order of the trial judge nor the opinion of this Court contains a single reference to whether the Act and the county ordinance violate any provision of the Federal Constitution.
It is true that the plaintiffs, in Bedingfield, did allege in their complaint that "[i]f Ordinance No. 1120 were authorized by Act 406, then Act 406 is unconstitutional based upon any one of the following grounds: .... B. Act 406 is a violation of the equal protection requirements and provisions of the federal and state constitutions." But I ask this question: Is the mere making of such an allegation in a complaint sufficient to satisfy the "same cause of action presented in both suits" element of the res judicata doctrine? I think not, especially when the adjudicatory orders of the trial court, and of this Court, affirmatively show that the issues in Bedingfield involved whether Act No. 406 was a general law or was a local law because the Act was applicable only to counties with a population of 500,000 or more.
But even assuming that the federal equal protection claim was presented and adjudicated in Bedingfield, the plaintiffs in this case are attacking the exemption scheme contained in Ordinance 1120, which exempts a number of occupations from the occupational tax.[1] Clearly, that claim was not presented or adjudicated in Bedingfield.
*1132 Jefferson County and BJCC argue that even if the plaintiffs' claims were not previously raised or adjudicated in the Bedingfield case, the claims are barred, nevertheless, because "any claim that was or could have been adjudicated in the prior action is barred from further litigation." Dairyland Insurance Co. v. Jackson, 566 So.2d 723, 725 (Ala. 1990). Stated differently, the County and BJCC contend that the theory on which the plaintiffs bring this action could have been asserted in the Bedingfield case and that this action is therefore due to be dismissed.
The test for determining whether two cases involve substantially the same cause of action is whether the same evidence would support a recovery in both actions. Barber v. Fields, 624 So.2d 532, 536 (Ala.1993); Vaughan v. Barr, 600 So.2d 994, 996 (Ala. 1992); Waters v. Jolly, 582 So.2d 1048, 1053 (Ala.1991); Garris v. South Alabama Production Credit Ass'n, 537 So.2d 911, 914 (Ala.1989); Dominex, Inc. v. Key, 456 So.2d 1047, 1054-55 (Ala.1984); Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1200 (Ala.1978). In Barber v. Fields, this Court reversed a summary judgment entered on res judicata grounds where both the former and the latter cases involved the city water service but the claims in the latter case, which pertained to the removal of water meters, was not litigated in the former case, which involved a claim that the city's refusal to extend water service to the plaintiff's land was a violation of her right to equal protection of the laws. Barber, 624 So.2d at 536. In Vaughan v. Barr, this Court reversed a judgment entered on res judicata grounds *1133 where both the former case and the latter case involved the same land and landowners but the former case, which involved a boundary dispute, was "based on different theories" and "require[d] different evidence" from that required in the latter case, which involved a claim of an easement by necessity. Vaughan, 600 So.2d at 996.
Although this case and the Bedingfield case involve Act 406 and Ordinance 1120, the similarity there ends, because the evidence necessary to prove the claims asserted in this case, and the legal arguments in support of those claims, will be very different from those in Bedingfield. Here, the plaintiffs allege that the exemptions to the tax violate their equal protection rights under the Federal Constitution. The Federal employees are permitted to maintain their Buck Act claims. How are their claims different from those of the non-Federal employees who claim equal protection violations? In each case, the plaintiffs apparently are citizens of the United States who are claiming protection of their rights under Federal constitutional and statutory provisions. The foundation of their claims, the Federal Constitution, is the same.
I have carefully examined the arguments of Jefferson County and those of BJCC, and I recognize the importance of this case to those entities, but I think the law is against them. The plaintiffs' claims in this case are just different from those presented in Bedingfield, and the evidence necessary to prove their claims will be very different from the evidence used to prove the claims asserted in Bedingfield. In fact, the issues presented in Bedingfield were largely legal issues relating to the classification between counties of 500,000 or more in population and counties of less than 500,000 in population and to the question of whether Act 406 violated the Alabama Constitution, and there is no mention in Bedingfield of any Federal constitutional claims adjudicated in either the trial court or this Court.
Based on the foregoing, I believe that the fourth element of the doctrine of res judicata as set forth in Dairyland Insurance Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990) ("the same cause of action presented in both suits"), is not present in this case; I believe that the trial judge correct concluded that the plaintiffs could maintain their action.
NOTES
[*] Although Justice BUTTS was not a member of this Court when this case was orally argued, he has listened to the tape of oral argument and has studied the record.
[1] Ordinance 1120 taxes the gross receipts of any person who engages in or follows any "vocation, occupation, calling and profession," but exempts from its definition of "vocation, occupation, calling and profession" the following: utility companies; freight lines and equipment companies; electric companies; gas companies; railroads; telephone companies; telegraph companies; express companies; financial institutions; insurance companies; abstract companies; acetylene gas and carbide manufacturers; adding machine, calculating machine, and comptometer businesses; advertising companies; air conditioning plant and equipment businesses; amusement parks; architects; attorneys; auctioneers; automobile dealers; automobile accessory dealers; automobile garages and shops; automobile storage garages; tire retreading shops; barbers; baseball parks; battery shops; beauty parlors; bicycle and motorcycle dealers; blueprint makers; bond makers; bottlers; bowling alleys; iron, railway supply, furnace supply, and mining supply brokers and agents; broom, brush, and mop manufacturers; cereal and soft drink retailers and wholesalers; certified public accountants; cigar, cigarette, and cheroot retailers and wholesalers; circus operators; cleaning and pressing establishments; coal and coke dealers; coffin and casket manufacturers, dealers, and agents; collection agencies; commission merchants or merchandise brokers; concert and musical entertainers; persons engaged in discounting notes, mortgages, and conditional sales contracts; construction companies or contractors; cotton buyers; cotton compress operators; millers; persons operating cotton warehouses; credit agency personnel; persons operating creosoting businesses; delicatessen shops; dentists; detectives; film developers and printers; directory printers; refrigerator dealers; embalmers; engineers; domestic servants employed in private homes; owners and operators of fertilizer factories; damaged and close out goods salesmen; fireworks dealers; fortunetellers; palmists, clairvoyants, astrologers, phrenologists and crystal gazers; fruit dealers; gasoline station and pump operators; glass salesmen; golf course operators; hat cleaners; fur dealers; horse, rodeo, and dog and pony show operators; horse and mule dealers; ice cream manufacturers; innkeepers; junk dealers; launderers; sleight-of-hand artists; lighting rod installers; lumber dealers and jobbers; lumberyard operators; machinery repair shops; manicurists; hairdressers; upholsterers; doctors, chemists, bacteriologists, and roentgenologists; persons engaged in the photocopy business; miners; monument and tombstone sellers; motion picture operators; oculists, optometrists, and opticians; osteopaths and chiropractors; operators of packing houses and cold storage plants; pawnbrokers; peddlers and itinerant vendors; photographers; musical instrument salesmen; pig iron storage operators; pistol and knife dealers; playing card salesmen; plumbers, steamfitters and tin shop operators; operators of pool halls, owners of racetracks and athletic fields; radio salesmen; real estate brokers and agents; restaurant, cafe, and cafeteria operators; operators of roadhouses, nightclubs, and public dance halls; sandwich shops, barbecue stands, hamburger and hot dog stands; sawmills; scientists, naturopaths and chiropodists; sewing machine salesmen; shooting gallery operators; shotgun and rifle dealers; skating rink operators; soliciting brokers; stock and bond brokers; street fair and carnival operators; syrup and sugar factory operators; theater, vaudeville, and variety show operators; ticket scalpers; tourist camp operators; tractor, road machinery, and trailer dealers; trading stamp merchants; freight carriers; transient dealers, vendors, and peddlers; turpentine stillers; vending machine operators; veterinarians; warehouse operators; wax factory operators and waste grease and animal by-product purchasers and receivers. See Ordinance 1120, § 1(B) and § 2; §§ 40-12-40 through XX-XX-XXX, § 40-12-50, §§ 40-12-52 through 40-12-55, §§ 40-12-57 through 40-12-60, § 40-16-6, and § 27-4-9, Ala.Code 1975.