The elements of the doctrine of res judicata have been precisely set out by this Court in Wheeler v. First AlabamaBank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978), where this Court said:
 "The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits."
See also Dominey v. Mathison, 292 Ala. 293, 293 So.2d 472
(1974), and my dissenting opinion in Century 21 PreferredProperties, Inc. v. Alabama Real Estate Comm'n, 401 So.2d 764,770 (Ala. 1981). Even a cursory examination of this doctrine as applied to the facts of this case reveals that it has no application to this case. In this dissent, I will make a brief statement of the facts and will state the principle of law I think should be applied to sustain the trial court's order.
The majority holds that these plaintiffs are bound by the judgment rendered in Bedingfield v. Jefferson County,527 So.2d 1270 (Ala. 1988), where the City of Birmingham challenged the constitutionality of Act No. 406 and the validity of a county ordinance establishing an occupational tax.
The trial judge, in denying the defendant's motion for a summary judgment in this case (that motion being based on the ground that the action was barred by the doctrine of resjudicata), issued an order in which he concluded, in part, that "[i]n Bedingfield v. Jefferson County, 527 So.2d 1270
(Ala. 1988), neither the trial court nor [this Court] determined *Page 1131 
whether Act No. 406 (Alabama Legislature 1967), authorizing the tax in question, or Jefferson County Ordinance No. 1120 (Jefferson County Commission 1987), imposing the tax in question, violates the equal protection clause of the United States Constitution by creating an unreasonable, unjust and improper classification of citizens subject to the tax, while exempting certain citizens from said tax in an arbitrary, irrational and unjust manner." The trial judge also determined that "[i]n Bedingfield v. Jefferson County, 527 So.2d 1270
(Ala. 1988), neither the trial court nor [this Court] determined whether the tax in question violates the Buck Act (4 U.S.C. § 111) as it pertains to federal employees." I agree with the trial court on both points.
In concluding that the trial judge was correct, I have examined the pleadings in Bedingfield and the order entered by the trial judge in that case and I have studied the opinion issued by this Court in Bedingfield, a case in which I participated. I have also carefully considered the argument of Jefferson County that "the claims in this case arise from the same nucleus of operative fact as the claims made inBedingfield and [that] because the evidence necessary to support both claims is identical, it is axiomatic that the fourth element of res judicata is satisfied," and I have given careful consideration to the views of my colleagues expressed in the majority opinion, and my only comment is that if the "same cause of action presented in both suits" element of theres judicata doctrine is so easily satisfied, then it could be extended ad infinitum and would establish a precedent that could close the courthouse doors to other plaintiffs in other cases who might find themselves faced with the rule of law herein established. I think that the Court is establishing a bad precedent.
My opinion that Bedingfield does not bar the claims presented in this case is the same as that of the trial judge: that this Court, in Bedingfield, did not adjudicate these claims, or any claim similar to them. The West Publishing Company synopsis inBedingfield succinctly states what that case was about, and the issues it adjudicated:
 "City challenged constitutionality of county ordinance establishing occupational tax. The Circuit Court, Jefferson County, Braxton L. Kittrell, Jr., J., upheld ordinance, and appeal was taken. The Supreme Court, Beatty, J., held that: (1) statute authorized county to levy occupational tax; (2) statute was general, rather than local legislation; and (3) statute authorizing levy of tax provided for collection of such tax."
527 So.2d at 1270. Where in the Bedingfield opinion is there an adjudication of the federal constitutional claims the plaintiffs raise in the instant action? Neither the order of the trial judge nor the opinion of this Court contains a single reference to whether the Act and the county ordinance violate any provision of the Federal Constitution.
It is true that the plaintiffs, in Bedingfield, did allege in their complaint that "[i]f Ordinance No. 1120 were authorized by Act 406, then Act 406 is unconstitutional based upon any one of the following grounds: . . . . B. Act 406 is a violation of the equal protection requirements and provisions of the federal and state constitutions." But I ask this question: Is the mere making of such an allegation in a complaint sufficient to satisfy the "same cause of action presented in both suits" element of the res judicata doctrine? I think not, especially when the adjudicatory orders of the trial court, and of this Court, affirmatively show that the issues in Bedingfield
involved whether Act No. 406 was a general law or was a local law because the Act was applicable only to counties with a population of 500,000 or more.
But even assuming that the federal equal protection claim was presented and adjudicated in Bedingfield, the plaintiffs in this case are attacking the exemption scheme contained in Ordinance 1120, which exempts a number of occupations from the occupational tax.[1] Clearly, that claim was not presented or adjudicated in Bedingfield. *Page 1132 
Jefferson County and BJCC argue that even if the plaintiffs' claims were not previously raised or adjudicated in theBedingfield case, the claims are barred, nevertheless, because "any claim that was or could have been adjudicated in the prior action is barred from further litigation." Dairyland InsuranceCo. v. Jackson, 566 So.2d 723, 725 (Ala. 1990). Stated differently, the County and BJCC contend that the theory on which the plaintiffs bring this action could have been asserted in the Bedingfield case and that this action is therefore due to be dismissed.
The test for determining whether two cases involve substantially the same cause of action is whether the same evidence would support a recovery in both actions. Barber v.Fields, 624 So.2d 532, 536 (Ala. 1993); Vaughan v. Barr,600 So.2d 994, 996 (Ala. 1992); Waters v. Jolly, 582 So.2d 1048,1053 (Ala. 1991); Garris v. South Alabama Production CreditAss'n, 537 So.2d 911, 914 (Ala. 1989); Dominex, Inc. v. Key,456 So.2d 1047, 1054-55 (Ala. 1984); Wheeler v. First Alabama Bankof Birmingham, 364 So.2d 1190, 1200 (Ala. 1978). In Barberv. Fields, this Court reversed a summary judgment entered onres judicata grounds where both the former and the latter cases involved the city water service but the claims in the latter case, which pertained to the removal of water meters, was not litigated in the former case, which involved a claim that the city's refusal to extend water service to the plaintiff's land was a violation of her right to equal protection of the laws.Barber, 624 So.2d at 536. In Vaughan v. Barr, this Court reversed a judgment entered on res judicata grounds *Page 1133 
where both the former case and the latter case involved the same land and landowners but the former case, which involved a boundary dispute, was "based on different theories" and "require[d] different evidence" from that required in the latter case, which involved a claim of an easement by necessity. Vaughan, 600 So.2d at 996.
Although this case and the Bedingfield case involve Act 406 and Ordinance 1120, the similarity there ends, because the evidence necessary to prove the claims asserted in this case, and the legal arguments in support of those claims, will be very different from those in Bedingfield. Here, the plaintiffs allege that the exemptions to the tax violate their equal protection rights under the Federal Constitution. The Federal employees are permitted to maintain their Buck Act claims. How are their claims different from those of the non-Federal employees who claim equal protection violations? In each case, the plaintiffs apparently are citizens of the United States who are claiming protection of their rights under Federal constitutional and statutory provisions. The foundation of their claims, the Federal Constitution, is the same.
I have carefully examined the arguments of Jefferson County and those of BJCC, and I recognize the importance of this case to those entities, but I think the law is against them. The plaintiffs' claims in this case are just different from those presented in Bedingfield, and the evidence necessary to prove their claims will be very different from the evidence used to prove the claims asserted in Bedingfield. In fact, the issues presented in Bedingfield were largely legal issues relating to the classification between counties of 500,000 or more in population and counties of less than 500,000 in population and to the question of whether Act 406 violated the Alabama Constitution, and there is no mention in Bedingfield of any Federal constitutional claims adjudicated in either the trial court or this Court.
Based on the foregoing, I believe that the fourth element of the doctrine of res judicata as set forth in DairylandInsurance Co. v. Jackson, 566 So.2d 723, 725 (Ala. 1990) ("the same cause of action presented in both suits"), is not present in this case; I believe that the trial judge correct concluded that the plaintiffs could maintain their action.
[1] Ordinance 1120 taxes the gross receipts of any person who engages in or follows any "vocation, occupation, calling and profession," but exempts from its definition of "vocation, occupation, calling and profession" the following: utility companies; freight lines and equipment companies; electric companies; gas companies; railroads; telephone companies; telegraph companies; express companies; financial institutions; insurance companies; abstract companies; acetylene gas and carbide manufacturers; adding machine, calculating machine, and comptometer businesses; advertising companies; air conditioning plant and equipment businesses; amusement parks; architects; attorneys; auctioneers; automobile dealers; automobile accessory dealers; automobile garages and shops; automobile storage garages; tire retreading shops; barbers; baseball parks; battery shops; beauty parlors; bicycle and motorcycle dealers; blueprint makers; bond makers; bottlers; bowling alleys; iron, railway supply, furnace supply, and mining supply brokers and agents; broom, brush, and mop manufacturers; cereal and soft drink retailers and wholesalers; certified public accountants; cigar, cigarette, and cheroot retailers and wholesalers; circus operators; cleaning and pressing establishments; coal and coke dealers; coffin and casket manufacturers, dealers, and agents; collection agencies; commission merchants or merchandise brokers; concert and musical entertainers; persons engaged in discounting notes, mortgages, and conditional sales contracts; construction companies or contractors; cotton buyers; cotton compress operators; millers; persons operating cotton warehouses; credit agency personnel; persons operating creosoting businesses; delicatessen shops; dentists; detectives; film developers and printers; directory printers; refrigerator dealers; embalmers; engineers; domestic servants employed in private homes; owners and operators of fertilizer factories; damaged and close out goods salesmen; fireworks dealers; fortunetellers; palmists, clairvoyants, astrologers, phrenologists and crystal gazers; fruit dealers; gasoline station and pump operators; glass salesmen; golf course operators; hat cleaners; fur dealers; horse, rodeo, and dog and pony show operators; horse and mule dealers; ice cream manufacturers; innkeepers; junk dealers; launderers; sleight-of-hand artists; lighting rod installers; lumber dealers and jobbers; lumberyard operators; machinery repair shops; manicurists; hairdressers; upholsterers; doctors, chemists, bacteriologists, and roentgenologists; persons engaged in the photocopy business; miners; monument and tombstone sellers; motion picture operators; oculists, optometrists, and opticians; osteopaths and chiropractors; operators of packing houses and cold storage plants; pawnbrokers; peddlers and itinerant vendors; photographers; musical instrument salesmen; pig iron storage operators; pistol and knife dealers; playing card salesmen; plumbers, steamfitters and tin shop operators; operators of pool halls, owners of racetracks and athletic fields; radio salesmen; real estate brokers and agents; restaurant, cafe, and cafeteria operators; operators of roadhouses, nightclubs, and public dance halls; sandwich shops, barbecue stands, hamburger and hot dog stands; sawmills; scientists, naturopaths and chiropodists; sewing machine salesmen; shooting gallery operators; shotgun and rifle dealers; skating rink operators; soliciting brokers; stock and bond brokers; street fair and carnival operators; syrup and sugar factory operators; theater, vaudeville, and variety show operators; ticket scalpers; tourist camp operators; tractor, road machinery, and trailer dealers; trading stamp merchants; freight carriers; transient dealers, vendors, and peddlers; turpentine stillers; vending machine operators; veterinarians; warehouse operators; wax factory operators and waste grease and animal by-product purchasers and receivers. See Ordinance 1120, § 1(B) and § 2; §§ 40-12-40
through 40-12-180, § 40-12-50, §§ 40-12-52 through 40-12-55, §§40-12-57 through 40-12-60, § 40-16-6, and § 27-4-9, Ala. Code 1975.